USCA1 Opinion

 

 November 25, 1996 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2176 UNITED STATES, Appellee, v. JEROME E. ROYAL, Defendant - Appellant. ____________________ ERRATA SHEET The opinion of this court issued on November 12, 1996 is amended as follows: On page 2, line 8 delete sentences that read: "We also vacate and remand the restitution order for findings regarding, and sentencing for, only those losses that Royal reasonably could have foreseen. We affirm on all other points." UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2176 UNITED STATES, Appellee, v. JEROME E. ROYAL, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin, Circuit Judge, _____________ and Barbadoro,* District Judge. ______________ _____________________ James E. Carroll, by Appointment of the Court, with whom _________________ Erin K. Kelly and Cetrulo & Capone were on brief for appellant. _____________ _________________ Nadine Pellegrini, Assistant United States Attorney, with __________________ whom Donald K. Stern, United States Attorney, was on brief for _______________ appellee. ____________________ November 12, 1996 ____________________  ____________________ * Of the District of New Hampshire, sitting by designation. TORRUELLA, Chief Judge. Appellant Jerome Royal TORRUELLA, Chief Judge. ____________ ("Royal") makes several claims on appeal. Specifically, he challenges the denial of his motions relating to jury selection and jury instructions, the sufficiency of the evidence supporting his conviction, and sentencing considerations. For the reasons discussed below, we reverse the denial of Royal's motion to inspect the master jury wheel and remand to allow Royal to inspect the master jury wheel and other relevant records. BACKGROUND BACKGROUND Factual History Factual History We briefly sketch out the bare facts of this conspiracy, providing facts related specifically to Royal as they become relevant. Considering the evidence in the light most favorable to the verdict, United States v. Kayne, 90 F.3d 7, 13 _____________ _____ (1st Cir. 1996), the jury could have found the following. EZ-EM, Inc., was a distributorship for Andover Tractor Trailer School ("ATTS"), a correspondence school in Methuen, Massachusetts. ATTS was party to a program participation agreement with the Department of Education to participate in the PELL grant program, the Guaranteed Student Loan program, the Plus program, and the Supplemental Loans for Students program. Under the agreement, ATTS must require a maximum time frame in which students complete a course with a minimum grade average. ATTS entered into a series of distributors' agreements whereby each distributor would refer students to enroll in ATTS's program. -2- Darryl Simmes, the financial aid officer for ATTS at EZ-EM, testified that he also acted as a recruiter for EZ-EM. Simmes worked at ALAT, another distributor affiliated with ATTS, prior to joining EZ-EM. Simmes testified that, at ALAT, when a student he recruited did not meet the minimum requirements of the program, he falsified the student's application to make it appear that he met those requirements. These minimum requirements included possessing a driver's license and making less than a certain income to be eligible for financial aid. Later, at EZ- EM, Simmes would contact a student he had recruited to sign a student loan check made out to both the student and the school. These students were told that they would not incur debt by signing the check and, often, later found that they had defaulted on loans they were not aware they had taken out. During the course of EZ-EM's existence, the distributorship enrolled at least 150 students. Sometimes, EZ-EM provided students with a set of exams including answers, requesting that a newly registered student sign off on the exams. Other times, the tests were forwarded to the student already completed. The completed forms would then be returned to ATTS. EZ-EM also supplied students with answers to later lessons, sometimes mailing these lessons to students. EZ- EM would inform students that they must sign the lessons or risk being thrown out of the program. Employees of EZ-EM paid some students to enroll in the ATTS program. ATTS paid EZ-EM a commission of $600-$700 per student enrolled. -3- Procedural History Procedural History A grand jury indicted Royal on October 7, 1992, on charges of conspiracy to commit mail fraud in violation of 18 U.S.C. 371, mail fraud in violation of 18 U.S.C. 1341, and aiding and abetting in violation of 18 U.S.C. 2. On March 13, 1995, the scheduled day of trial, a petit jury venire of 53 appeared for impanelment. Royal, a black male, orally moved to strike the jury venire. The court granted this motion and rescheduled the trial for one week from that date. On March 15, Royal filed a motion to inspect the master jury wheel for the years from 1993 to 1995. The following day, Royal filed a Motion to Strike Jury Venire, which argued that the district's jury selection plan systematically excludes blacks from the jury pool. The district court deferred ruling on these motions until Royal could make a proffer demonstrating that the jury plan systematically excluded blacks. On March 20, 1995, trial commenced in the district court. After viewing the jury venire, Royal renewed his motion to strike the jury venire. Royal further moved for a hearing with respect to the inadequacies of the Amended Jury Plan for the Eastern Division of the District of Massachusetts ("Amended Jury Plan"). In support of his various motions, Royal submitted two affidavits from Dr. Gordon Sutton, Professor of Sociology at the University of Massachusetts at Amherst, which contended that the Amended Jury Plan systematically excluded blacks and other minorities from the jury venire. The district court determined -4- that it did not have statutory authorization to implement the remedy Royal suggested -- supplementing the jury venire such that it would provide a fair cross-section of the community -- and denied Royal's motions. Following the close of the government's case, Royal moved for judgment of acquittal on all counts. The district court granted the motion only as to Count 24, charging mail fraud. After a six day trial, the jury returned guilty verdicts on one count of conspiracy and eight counts of mail fraud, with verdicts of not guilty on four counts of mail fraud. Royal's sentence included 27 months imprisonment, 36 months supervised release, and restitution of $30,000. This appeal followed. DISCUSSION DISCUSSION I. Jury Selection I. Jury Selection ______________ Appellant Royal asserts that he was unconstitutionally denied his right to a jury selected at random from a fair cross- section of the community, as guaranteed by the Sixth Amendment. Taylor v. Louisiana, 419 U.S. 522, 528 (1975). That same right ______ _________ is ensured by the Jury Selection and Service Act of 1968. See 28 ___ U.S.C. 1861 et seq. (1994). __ ____ A. Motion to Inspect the Master Jury Wheel Records A. Motion to Inspect the Master Jury Wheel Records _______________________________________________ "To the extent that [Royal's] contentions rest on statutory interpretations, we review the district court's denial of [Royal's] motion de novo. . . . The district court's factual findings, however, will not be disturbed unless clearly -5- erroneous." United States v. Bailey, 76 F.3d 320, 321 (10th ______________ ______ Cir.), cert. denied, __ U.S. __, 116 S. Ct. 1889 (1996). ____________ At the first hearing, held on March 15, 1995, the district court stated that the request before it was essentially a request for an evidentiary hearing to extend the scope of requested evidence to include discovery of the master jury wheel. The court then placed the burden on Royal to show "by a factually supportable submission that there is some reasonable basis for supposing that the matters you're asking to get into will have some material bearing upon a decision I am to make." Transcript of hearing, March 15, 1995, at 6. Because Royal made no factually supportable showing of relevance and materiality, the district court denied the motion to inspect. On a second motion to inspect the jury records, the district court suggested that, in order to inspect the requested records, Royal was required to make a showing that he would be able to satisfy the three prongs of Duren v. Missouri, 439 U.S. _____ ________ 357 (1979). Under Duren, in order to establish a prima facie _____ violation of the fair cross-section requirement, "the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Id. at 364. The district court expressed concern that Royal ___ -6- would not be able to satisfy the third prong by showing systematic exclusion. Accordingly, it deferred ruling until Royal could make a showing that would enable the court "to determine whether we are doing something that is potentially useful or instead doing something that's just a waste of resources because it will not be useful in any event." Transcript of Hearing, March 17, 1995, at 15-16. Under the Sixth Amendment, a defendant has the right to a jury selected from a source fairly representative of the community. See Taylor v. Louisiana, 419 U.S. 522, 527-28 (1975). ___ ______ _________ Section 1867 of Title 281 establishes "the exclusive means by  ____________________ 1 Section 1867 of Title 28 states, in relevant part: (a) In criminal cases, before the voir dire begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury. . . . * * * (d) Upon motion filed under subsection (a) . . . of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. . . . If the court determines that there has been a substantial failure to comply with the provisions of this title in -7- which a person accused of a Federal crime . . . may challenge any jury on the ground that such jury was not selected in conformity with the provisions of [the Title]." 28 U.S.C. 1867(e) (1994). In Test v. United States, 420 U.S. 28 (1975), the Supreme Court ____ ______________ interpreted the relevant statutory language of section 1867. See ___ Test, 420 U.S. at 30. Before voir dire examination or within ____ seven days after the defendant could have discovered the grounds for a challenge, a defendant may move to dismiss the indictment or stay the proceedings for substantial failure to comply with the provisions of the title. 28 U.S.C. 1867(a). The statute requires that the challenge be accompanied by "a sworn statement of facts which, if true, would constitute a substantial failure to comply with" these provisions. 28 U.S.C. 1867(d). Relevant to our inquiry here, subsection (f) of section 1867 provides that "[t]he parties . . . shall be allowed to inspect, reproduce, and  ____________________ selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title. . . . * * * (f) The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a) . . . of this section . . . . The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion. . . . 18 U.S.C. 1867 (1994). -8- copy such records or papers at all reasonable times during the preparation and pendency of such a motion." 28 U.S.C. 1867(f). It is this particular subsection with which the Supreme Court was concerned in Test and which is dispositive of Royal's challenge. ____ In Test, the district court denied the defendant's ____ motion to inspect the jury selection records pursuant to section 1867(e). Test, 420 U.S. at 29. The Supreme Court determined ____ that the language in subsection (e) established "essentially an unqualified right to inspect jury lists." Id. at 30. This ___ interpretation was supported "not only by the plain text of the statute, but also by the statute's overall purpose of insuring 'grand and petit juries selected at random from a fair cross section of the community.'" Id. (quoting 28 U.S.C. 1861). The ___ Court admonished that, without such access, a litigant will be unable to determine whether he has a meritorious claim. See id. ___ ___ We adhere to and apply the Supreme Court's determination that a defendant, such as Royal, challenging the jury selection procedures has an unqualified right to inspect jury records. Because the right of access to jury selection records is "unqualified," a district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions. See Test, 420 U.S. at 30. Although the burden is on the ___ ____ defendant to establish a prima facie case of unconstitutional exclusion, see United States v. Pion, 25 F.3d 18, 22 n.4 (1st ___ _____________ ____ Cir.), cert. denied, __ U.S. __, 115 S. Ct. 326 (1994), the right ____________ -9- of access to the jury selection records is a precursor to this burden and is intended to provide the defendant with the evidence necessary to mount a proper showing. To avail himself of the right of access to jury selection records, a litigant need only allege that he is preparing a motion to challenge the jury selection process. See United States v. Alden, 776 F.2d 771, 773 ___ _____________ _____ (8th Cir. 1985). The district court, therefore, erred in requiring Royal to make a showing of probable success on the merits of his jury selection challenge as a condition of granting access to the records. Furthermore, a district court may not require a defendant requesting access to jury selection records to submit with that request "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title." 28 U.S.C. 1867(d). The procedural mechanisms of the jury selection provisions require the moving party to submit a sworn statement to support a motion to strike a jury venire or challenge the selection processes; such a sworn statement is not required to support a motion to inspect the records. See id. The Supreme Court has established that the ___ ___ right of access is "unqualified." The Eighth Circuit, faced with an appeal of the nature of Royal's, recognized that, [a]lthough the district court's analysis is persuasive, the district court is not free to establish additional requirements that defendants must meet in order to gain access to jury selection records. The Supreme Court has unequivocally stated that the right to inspect these records is 'essentially unqualified' and is conditioned only in the -10- manner set forth in the statute. Test v. ____ United States, 420 U.S. at 30. _____________ Alden, 776 F.2d at 775. Thus, while the district court may _____ establish reasonable procedures whereby the inspection may take place, the district court does not have discretion to formulate additional requirements beyond those established by the statute. Id. ___ Nevertheless, we find that this error does not require that we reverse Royal's conviction. Rather, we remand the case with instructions to allow Royal access to "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process," 28 U.S.C. 1867(f), in order to support a motion to strike the jury venire. If Royal determines that the Amended Jury Plan violates the jury selection procedures required under the statute, he may move for a new trial under 28 U.S.C. 1867(a). See United States v. Marcano- ___ _____________ ________ Garc a, 622 F.2d 12, 18 (1st Cir. 1980). If the district court ______ finds that the Amended Jury Plan violates the constitutional and statutory requirements, the court may order a new trial. 28 U.S.C. 1867(d). B. The Evidentiary Hearing B The Evidentiary Hearing _______________________ As a remedy for the allegedly unconstitutional jury selection process, Royal seeks an evidentiary hearing on the merits of his claim. As we noted above, the district court treated Royal's motion to strike the jury venire as a request for an evidentiary hearing regarding the contents of the master jury wheel. The district court sought from Royal a showing by a -11- factually supportable submission that the documents Royal sought would have a material bearing on the jury selection challenge. In the normal motions context, a "party seeking an evidentiary hearing must carry a fairly heavy burden." United ______ States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). When a judge ______ ______ denies a party's request for an evidentiary hearing, we review that determination for abuse of discretion. United States v. _____________ Jim nez Mart nez, 83 F.3d 488, 498 (1st Cir. 1996); see also _________________ ________ United States v. Garc a, 954 F.2d 12, 19 (1st Cir. 1992) (noting _____________ ______ that a criminal defendant "is not entitled to an evidentiary hearing upon demand"). Here, the district court denied the motion for a hearing because it found that Royal failed to show that he could meet the third prong of the Duren test. However, Royal's motion _____ was made without the benefit of information to which he was entitled as a matter of law. On remand, if Royal is able to use this information on the jury selection process to show a factual dispute that, if resolved in his favor, would entitle him to relief, then he would be entitled to an evidentiary hearing. C. Motion to Strike the Jury Venire C Motion to Strike the Jury Venire ________________________________ Because Royal was erroneously denied access to the jury selection documents, his arguments in support of his challenge are not fully developed. At this time, our consideration of the merits of his challenge would be premature. We remand to the district court Royal's jury selection challenge so that it may review Royal's claim in the first instance, after a full record -12- has been developed. See Davidson v. Sullivan, 942 F.2d 90, 96 ___ ________ ________ (1st Cir. 1991) (adopting a similar posture). We do not pass on the merits of Royal's claim. II. Jury Instruction on Conspiracy Charge II. Jury Instruction on Conspiracy Charge _____________________________________ Royal contends that the district court's jury instruction on the charge of conspiracy was in error and that error lessened the government's burden of proof beyond a reasonable doubt. In deciding whether the trial court submitted erroneous instructions to the jury, we "determine whether [the instruction] tended to confuse or mislead the jury on the controlling issues." Brown v. Trustees of Boston Univ., 891 F.2d _____ ________________________ 337, 353 (1st Cir. 1989), cert. denied, 496 U.S. 937 (1990). We ____________ consider the instructions "as a whole; portions of it are not to be treated in isolation." Id. We find that the instructions, as ___ a whole, were not erroneous. In fact, as discussed below, the double intent instruction may have heightened the government's burden. Consequently, not only did the instruction not prejudice Royal, it in fact benefitted Royal. There was no error. The statutory provision under which Royal was charged finds a violation of the law "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy . . . ." 18 U.S.C. 371 (1966). The district court's instruction on the charge of conspiracy was, in pertinent part, as follows: -13- In order to establish that the defendant is guilty of this charge of conspiracy, the Government must prove these essential elements beyond a reasonable doubt: First: That two or more persons knowingly conspired, combined or agreed to commit an offense against the United States, the purpose of which was to commit mail fraud, and that the conspiracy was formed or existing at or about the time alleged in the indictment. Second: That the defendant knowingly and intentionally became a member of the conspiracy. Third: That one of the conspirators knowingly did some act to effect the object of the conspiracy. * * * The intent that the Government must prove beyond reasonable doubt to establish the charge of conspiracy in this case is an intent to defraud as alleged in the indictment. It is not necessary, however, for the Government to prove an intent on the part of the defendant to participate in all parts or aspects of the conspiracy. * * * There are two aspects of the intent the Government must prove beyond a reasonable doubt. First, the Government must prove the intent to agree to be a member of the conspiracy. Second, the Government must prove the intent to participate in the commission of at least one of the substantive offenses. Transcript at 6-49--6-54. Royal, in his brief, sets out the following portion of the instructions in support of his claim that the district court erred in its instructions to the jury on the required intent of conspiracy: -14- It is not required that the Government prove, in order to establish the conspiracy offense, that the defendant had the intent to commit personally all of the substantive crimes that were within the object of the conspiracy. Stated another way, the requirement is that the Government prove both an intent to agree to be a member of the conspiracy and an intent to participate personally in the commission of at least one of the substantive offenses. Id. at 6-54. Reviewing this instruction, we find that the ___ district court's instructions, by using language that imposes a higher burden on the government than the law requires, did not prejudice Royal. Therefore, reversal of Royal's conviction is not warranted. Royal claims that this court has applied two different definitions of conspiracy, and that the district court's attempt to reconcile the conspiracy precedents led to the error of which he now complains. Royal contends that the controlling law in this circuit requires the government to prove that Royal intended to enter into the agreement forming the conspiracy and intended to commit the substantive offense. In so arguing, Royal misreads this court's precedents. The Supreme Court has said that "[i]n a conspiracy, two different types of intent are generally required -- the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy." United States v. United States Gypsum _____________ ____________________ Co., 438 U.S. 422, 443 n.20 (1978). It is by now well-settled ___ that the government need not prove that the defendant intended -15- personally to commit the substantive crime or crimes that were the object of the conspiracy. United States v. Piper, 35 F.3d _____________ _____ 611, 615 (1st Cir. 1994), cert. denied, 115 S. Ct. 1118 (1995). ____________ Piper plainly refutes Royal's argument that he was entitled to an _____ instruction that he intended to commit multiple acts of mail fraud. The district court's instruction that "the government must prove the intent to participate in the commission of at least one of the substantive offenses" was, if anything, generous, and we find no error prejudicing Royal's rights. III. Sufficiency of the Evidence III. Sufficiency of the Evidence ___________________________ Finding that the legal principles were properly presented to the jury, we turn to Royal's argument that the evidence was insufficient to sustain his convictions for conspiracy and mail fraud. Royal contends first that there was no evidence of his knowledge of the conspiracy and "virtually no evidence" that he engaged in fraudulent conduct in furtherance of the conspiracy to defraud the government and the students he enrolled in the program. Royal also argues that the government failed to prove that he had the specific intent to defraud the Department of Education required to support his mail fraud conviction. We first review the evidence presented to the jury. "In assessing a challenge to the sufficiency of the evidence, we 'review the record to determine whether the evidence and reasonable inferences therefrom, taken as a whole and in the light most favorable to the prosecution, would allow a rational jury to determine beyond a reasonable doubt that the defendant -16- [was] guilty as charged.'" United States v. Sullivan, 85 F.3d _____________ ________ 743, 747 (1st Cir. 1996) (quoting United States v. Mena-Robles, 4 _____________ ___________ F.3d 1026, 1031 (1st Cir. 1993), cert. denied sub nom., __ U.S. _____________________ __, 114 S. Ct. 1550 (1994)). Drawing all reasonable inferences in favor of the verdict, the jury could have found the following about Royal's involvement in the EZ-EM conspiracy. Appellant Royal began working for EZ-EM in December 1988. At the beginning of 1989, he replaced Darryl Simmes as financial aid officer at EZ-EM a position paid by ATTS. At the time he held that position, financial aid officers were prohibited from engaging in recruitment activities. While serving as financial aid officer at EZ-EM Royal also engaged in recruitment activities. For each student he enrolled in the ATTS program, Royal received a $100-$125 commission. For this commission, Royal would pay current students to bring in others to enroll in the program. Royal also paid students to enroll in the program. Royal was given a copy of the answers to provide students to help them complete the ten lessons required upon enrollment. Royal was aware that many of the students who signed up did not intend to complete the ATTS program, but merely signed up to receive the twenty dollars he paid them. Because of this, he often either gave students copies of the answer sheets or completed the students' tests himself. Royal gave at least two students copies of the answers to the tractor trailer correspondence course lessons, which were completed and sent to ATTS. Sometimes, he -17- instructed students to change a few of the answers so that their test scores would not consistently equal one hundred. Although the first set of lessons were provided when a student signed up, thereafter the tests and sometimes the answers were mailed to students. A student receiving federal financial aid for the ATTS program was required to have received no prior federal student loans. When signing up students for financial aid, Royal instructed those who had previous federal student loan debt not to list the debt on their financial aid applications. Upon Royal's arrival at EZ-EM Darryl Simmes explained to Royal the procedure by which student loan checks would be signed, which included paying others to assist the school in getting a "reluctant student" to sign a check. At times, Royal paid students twenty dollars to sign the loan checks. Royal would sometimes explain to students that, by signing the loan checks, they would be able to return the checks and eliminate the indebtedness. In addition, Royal obtained the endorsing signatures of students on the back of student loan checks that they did not know they were endorsing or would be liable for. The students often were not told when they entered the program that they would have to pay up front or that they would need a loan prior to moving on to the next level of the course work. Royal told one student that the check was being sent back to ATTS, but that EZ-EM needed his signature to send it back. Royal did not inform him that he would incur debt by signing the check. -18- Two other students later received statements in the mail referring to a loan that they had unknowingly taken out. Royal accompanied recruiters whose role it was to talk the students into signing over the loan checks to the school. These recruiters, however, did not explain to the students that signing the loan checks would result in their incurring debt. Royal also witnessed Emmet Cotter, the owner of EZ-EM, using a flashlight and later a xerox machine to trace student signatures on various documents. At one point, Cotter also requested that Royal sign three checks totalling $30,000 so that Royal could be paid. Royal signed up students for the tractor trailer course who did not have valid drivers' licenses. When this occurred, Royal would simply make up a driver's license number. Simmes explained to Royal that, when he recruited students, he should leave blank responses on the applications of students who stated that they did not have a driver's license or that they had previously obtained financial aid. Cotter explained to Royal how to make up a driver's license number, which Royal did when filling out applications for those students who did not possess a driver's license. He completed applications using false information, including misstating an applicant's criminal record. A. Conspiracy Charge A. Conspiracy Charge _________________ The evidence on this record sufficiently supports the jury's guilty verdict on the conspiracy charge. The conspiracy count charged Royal with engaging in a conspiracy "[t]o knowingly devise and execute a scheme and artifice to obtain money by means -19- of false and fraudulent pretenses, representations and promises and, for the purpose of executing and attempting to execute the scheme," engaging in mail fraud. As will be discussed below, we find the evidence sufficient to convict Royal of mail fraud, the substantive offense charged in this conspiracy. In order to prove a conspiracy under section 371, the government must prove the existence of a conspiracy, the defendant's knowledge of and voluntary participation in it, and the commission of an overt act in furtherance of the agreement. . . . The agreement need not be proved to have been explicit, and may be proved by circumstantial evidence. United States v. Frankhauser, 80 F.3d 641, 653 (1st Cir. 1996) ______________ ___________ (citations omitted). To prove voluntary participation, the government must prove that the defendant had an intent to agree and an intent to effectuate the object of the conspiracy. See ___ Piper, 35 F.3d at 615; see also Frankhauser, 80 F.3d at 653. "To _____ ________ ___________ uphold a conviction, the court need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in a plausible rendition of the record." United States v. Echeverri, ______________ _________ 982 F.2d 675, 677 (1st Cir. 1993) (citations and internal quotations omitted). The evidence here, taken together and drawing all reasonable inferences therefrom, supports Royal's conviction for conspiracy. The jury could have concluded that a conspiracy existed whereby the employees of EZ-EM defrauded the students whom they signed up for student loans and, in that process, utilized the United States' mails. Furthermore, the jury could -20- have found that Royal intended to agree to engage in the conspiracy and intended to effectuate the object of the conspiracy. Based on the circumstantial evidence, including testimony that Royal engaged in acts in furtherance of the conspiracy, that he described to others his fraudulent acts in furtherance of the conspiracy, and gained financially from his own acts and those of his co-conspirators, the jury could conclude that Royal had an intent to agree with his co- conspirators. In addition, from the evidence that Royal paid students to enroll in the program, paid students to sign student loan checks, told students who signed loan checks that, by signing the check, they would not incur debt, forged student ___ drivers' license numbers, and misstated students' past government loan history and criminal records, the jury could have concluded that he did so with an intent to defraud these students and used the mails in doing so. All of these served as acts in furtherance of the conspiracy to defraud. Here, Royal did not merely know of his fellow employees' illegal activities. See, ___ e.g., United States v. Soto, 716 F.2d 989, 991-92 (2d Cir. 1983). ____ _____________ ____ Royal took steps necessary to effectuate the illegal conspiracy. Accordingly, Royal's conviction on the conspiracy count is supported by sufficient evidence. B. Mail Fraud B. Mail Fraud __________ Second, Royal complains that his convictions on eight counts of mail fraud were not supported by sufficient evidence. "To prove mail . . . fraud, the government must prove, beyond a -21- reasonable doubt: (1) the defendant's knowing and willing participation in a scheme or artifice to defraud with specific intent to defraud, and (2) the use of the mails . . . in furtherance of the scheme." United States v. Sawyer, 85 F.3d _____________ ______ 713, 723 (1st Cir. 1996). "The defendant need not instigate the scheme so long as he willfully participates in it, with the knowledge of its fraudulent nature and with the intent to achieve its illicit objectives." United States v. Yefsky, 994 F.2d 885, _____________ ______ 891-92 (1st Cir. 1993). A particular defendant need not have placed a specific item into the mails. It is enough that the use of the mails took place in the ordinary course of business, Pereira v. United States, 347 U.S. 1, 8 (1954), or was reasonably _______ _____________ foreseeable as a result of the conspiracy participants' actions, Yefsky, 994 F.2d at 892. ______ Here, documents in which Royal included misstated or fraudulent information were sent to ATTS. Even if Royal did not place those documents into the mails, it follows that, in the ordinary course of business, admissions and federal student financial aid applications completed by Royal would be sent to ATTS, the information from those applications would be sent to the Department of Education, and information from the school would be sent to the students. It also follows that student loan checks would be sent through the mails. The jury could have reasonably found that it was reasonably foreseeable by Royal that the mails would be utilized to perpetrate this scheme to defraud. -22- The scheme to defraud in this case consisted of actions on the part of EZ-EM employees to convince students to sign up for the ATTS program, apply for federal student loans, loans for which they sometimes did not qualify, incur debt that they did not realize they would be obligated to repay, and to mislead some students to believe that they would not incur debt by endorsing the loan checks. As a result of these acts, ATTS paid commissions to EZ-EM. From these commissions, the employees of EZ-EM who perpetrated the acts to defraud the students were paid salaries or commissions. The jury could reasonably have found that these acts constituted a scheme to defraud the students EZ- EM enrolled in ATTS. Royal contends that the government was required to prove that he had the specific intent to defraud the United States Department of Education. Although the indictment against Royal charges him with "a scheme to defraud the United States Department of Education, and the students and prospective students of ATTS," the government was not required to prove that he intended to defraud the Department of Education specifically. The statute requires only that there be a scheme to defraud, see ___ 18 U.S.C. 1341, and we have required only a showing of a specific intent to defraud. United States v. Sawyer, 85 F.3d _____________ ______ 713, 723 (1st Cir. 1996). The jury could have reasonably found that Royal had a specific intent to engage in a scheme to defraud the students. This is all that is required. Royal's conviction on the mail fraud counts is supported by sufficient evidence. -23- Because the government met its burden by showing a scheme to defraud the students, we do not address whether it also proved that Royal had a specific intent to defraud the Department of Education. IV. Application of Sentencing Guidelines IV. Application of Sentencing Guidelines ____________________________________ Royal next directs several challenges at the district court's application of the United States Sentencing Guidelines. We review a district court's factual determinations under the guidelines for clear error and legal conclusions de novo. United _______ ______ States v. Balogun, 989 F.2d 20, 22 (1st Cir. 1993). We address ______ _______ each challenge in turn. A. Mitigating Role -- Section 3B1.2 A. Mitigating Role -- Section 3B1.2 ________________________________ Royal contends that his role in the commission of this conspiracy was of such a lesser degree of culpability than his co-conspirators' that the district court erroneously denied his motion for a downward departure. "We first note that defendants are not automatically entitled to a downward adjustment, whatever their role in the crime." Balogun, 989 F.2d at 22-23. The _______ Sentencing Guidelines allow a four level departure for one who is a minimal participant, meant to apply to those "defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. 3B1.2, application note 1. This departure is meant to be used infrequently. U.S.S.G. 3B1.2, application note 2. The Guidelines allow a two level departure for one who is a minor participant in the criminal activity; this departure is meant to apply to "any participant who is less -24- culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. 3B1.2, application note 3. Where the defendant's conduct falls between these two levels of culpability, a downward departure of three levels may be awarded. U.S.S.G. 3B1.2. "The defendant has the burden of showing that he is entitled to a reduction in his offense level under 3B1.2 . . . . On appeal, the defendant must establish that the district court's determination was clearly erroneous." United States v. _____________ Cartagena-Carrasquillo, 70 F.3d 706, 716 (1st Cir. 1995). The ______________________ record on which the district court based its factual determination of Royal's role in this offense supports the finding that Royal was neither a minimal nor a minor participant. Royal's role in the EZ-EM operation was integral. He recruited students for a program for which EZ-EM, and in turn Royal, would receive monetary commissions. Royal falsified information on school applications and federal student loan applications. He was responsible for obtaining student signatures endorsing student loan checks. Indeed, Royal even misled some into believing that by endorsing the check they would be relieved of any indebtedness. All of these acts were integral to the scheme to defraud the students and the co-conspirators gained financially as a result. The district court also was entitled to find that Royal had knowledge of and intent to further the scope and all aspects of the conspiracy. We cannot find that Royal played a less significant role or that he was less culpable than -25- his co-conspirators in effecting the scheme to defraud. See, ___ e.g., Santiago-Gonz lez, 66 F.3d 3, 8 (1st Cir. 1995). Based on ____ _________________ these findings, we cannot say that the district court's sentencing determination was clearly erroneous. Royal compares his situation to cases in which conspirators were granted downward departures. In those cases, the sentencing court determined that the defendant's role in the commission of the crime was minimal or minor. See, e.g., United ___ ____ ______ States v. Mu oz, 36 F.3d 1229, 1238 (1st Cir. 1994), cert. denied ______ _____ ____________ sub nom., __ U.S. __, 115 S. Ct. 1164 (1995); United States v. _________ _____________ Innamorati, 996 F.2d 456, 490 (1st Cir. 1993), cert. denied, __________ _____________ 510 U.S. 1120 (1994); United States v. De La Cruz, 996 F.2d 1307, _____________ __________ 1314-15 (1st Cir.), cert. denied, 510 U.S. 936 (1993); United _____________ ______ States v. DiIorio, 948 F.2d 1, 3-6 (1st Cir. 1991). Royal's ______ _______ burden is a heavy one and although he may consider his role in the offense more comparable to that found in the cases he cites, the district court found otherwise. "[W]here there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." United States v. Santiago-Gonz lez, 66 F.3d at 7. _____________ _________________ Royal claims that the only evidence offered against him at trial was that "he worked in the Niagara Falls office of ATTS and met some of the government's witnesses when they visited the office." Royal's attempt to put his own spin on the facts does not render the district court's determination clearly erroneous. Each of Royal's acts was an integral part of the scheme to defraud and -26- the sentencing court was not clearly erroneous in denying Royal's requested downward departure under the guidelines. B. More than Minimal Planning B. More than Minimal Planning __________________________ Royal complains that the district court improperly adjusted upward two levels because Royal's acts and role in the offense required more than minimal planning. See U.S.S.G. ___ 2F1.1(b)(2)(A). Royal maintains that the trial testimony shows that he was "merely an office attendant" at EZ-EM and that he was not present when the "principal planners" met to discuss the scheme. The Commentary to section 2F1.1 refers the reader to the definition of "more than minimal planning" set forth in the Commentary to section 1B1.1. There, "more than minimal planning" is defined as "more planning than typical for commission of the offense in a simple form." U.S.S.G. 1B1.1, application note 1(f). "'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." Id. ___ "[W]e are not inclined to reverse a finding of more than minimal planning unless the evidence compels the conclusion that the defendant's actions were purely opportune or 'spur of the moment.'" United States v. Brandon, 17 F.3d 409, 459 (1st _____________ _______ Cir.), cert. denied sub nom., __ U.S. __, 115 S. Ct. 80 (1994). ______________________ We find that here, the complex scheme to defraud and Royal's conduct in furtherance of it were not purely opportune and, therefore, meet the definition of "more than minimal planning." -27- The trial testimony demonstrates that Royal engaged in several repeated fraudulent acts in furtherance of this conspiracy. The sentencing court was entitled to find, under the definition provided by the guidelines, that Royal's repeated acts in the course of this conspiracy required more than minimal planning. The district court did not err in making a departure upward to take this into account. -28- V. Restitution Order V. Restitution Order _________________ Royal makes two arguments challenging the validity of the district court's restitution order. Royal contends that the order of restitution in the amount of $30,000 lacked legal support because it attributes more losses to him than those caused by the counts for which he was convicted. Royal further maintains that the order was improper because he is unable to repay such a large amount. The district court has the authority to impose restitution under Title 18 of the United States Code, sections 3663 and 3664. Royal's first contention amounts to the following. Because his convictions included four counts of mail fraud relating to the mailing of only four loan checks, he should only be required to pay restitution in the total amount of those checks, $9870. In the alternative, Royal argues that, if his conviction for conspiracy is included in the restitution order, the total loss reasonably foreseeable to him would be the amount of checks that passed through EZ-EM during the time he worked at the Niagara Falls operation. Royal claims this amount would be no more than $17,272.50. Based on this analysis, Royal contends that the restitution order of $30,000 was excessive. At the time of Royal's criminal acts, a sentencing court could impose restitution only for losses caused by the defendant's offense or offenses. 18 U.S.C. 3663; see also ________ Hughey v. United States, 495 U.S. 411, 414 (1990); United States ______ _____________ _____________ v. Camuti, 78 F.3d 738, 746 (1st Cir. 1996). Although this ______ -29- authority under the statute was subsequently broadened by congressional amendment to require restitution to include harm resulting from "the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern," see 18 U.S.C. 3663(a)(2) ___ (Supp. 1996), the amendments do not apply retroactively. See ___ Camuti, 78 F.3d at 746. Accordingly, under the applicable law, ______ Royal is correct in arguing that he may be ordered to make restitution only for the "loss caused by the specific conduct that is the basis of the offense of conviction." Hughey, 495 ______ U.S. at 413. We have previously held that restitution may be imposed for a mail fraud conviction "only if it stems from a transaction linked to a specific mailing." Camuti, 78 F.3d at 746. While ______ the amount attributable to the specific mailings for which Royal was convicted may amount to only $9870, Royal was also convicted of conspiracy to defraud the Department of Education and the students of ATTS. In the sentencing context, one convicted of conspiracy may be held liable for the acts of his co-conspirators in furtherance of the conspiracy that are reasonably foreseeable, as the Sentencing Guidelines explicitly provide. U.S.S.G. 1b1.3(a)(1)(B); see also United States v. O'Connor, 28 F.3d ________ _____________ ________ 218, 222 (1st Cir. 1994). Thus, the district court may order Royal to pay restitution not only for an amount equivalent to the four student loan checks involved in the mail fraud counts, but also for any other reasonably foreseeable loss caused by Royal or his co-conspirators acting in furtherance of this conspiracy. -30- Royal has argued that the district court improperly based its loss determination on defaults caused by acts that occurred in 1988, prior to the time in the last one or two months of 1988 when he joined the Niagara Falls conspiracy. It is true that "[b]y definition, acts that occurred before a defendant enters a conspiracy cannot be foreseeable." United States v. ______________ Balogun, 989 F.2d 20, 22 (1st Cir. 1993). And upon a review of _______ the sentencing hearing transcript, it indeed appears unclear whether the sentencing court took into account acts that occurred prior to Royal's involvement. But the record also indicates that Royal waived this objection in the district court, and any hypothetical error in the calculation of loss does not rise to the level of plain error. See United States v. Winter, 70 F.3d ___ _____________ ______ 655, 659 (1st Cir. 1995), cert. denied, __ U.S. __, 116 S. Ct. _____________ 1366 (1996). Although Royal extensively challenged the government's calculation of the reasonably foreseeable loss attributable to him, he never argued that the loss calculation improperly included losses connected with acts prior to his initial involvement. Having failed to raise this objection below, Royal is now bound to demonstrate that any error affected "substantial rights." Id. But this seems doubtful -- the district court set ___ the total amount of restitution at $500,000, but ordered partial restitution of only $30,000 because of Royal's lack of financial resources. Even if the court had excluded all losses attributable to acts from 1988, it seems implausible that the -31- court's total restitution figure would have dropped from $500,000 to less than $30,000. Because any possible error here falls well short of the standard for considering waived claims, we decline to remand the restitution determination. Finally, Royal's contention that the district court's restitution order is in error because Royal lacks the financial resources necessary to repay the amount imposed is without merit. We have noted in the past that, although a court must consider the financial situation of the defendant when imposing restitution, see 18 U.S.C. 3664(a), it need not make specific ___ findings regarding the defendant's finances "so long as the record on appeal reveals that the judge made implicit findings or otherwise adequately evinced his consideration of those factors." United States v. Savoie, 985 F.2d 612, 618 (1st Cir. 1993). The _____________ ______ record adequately reflects the district court's consideration of Royal's financial ability to make restitution. Indeed, the district court lowered the amount of restitution from $500,000 to $30,000 in light of Royal's financial circumstances. Furthermore, the court noted that if Royal is unable to make restitution in full during the course of his prison employment and thereafter during the period of his parole, he has no obligation. "Although we agree that the evidence in the presentence report may not be able to support a finding that [Royal] has the ability to pay restitution in that amount, the statute does not require such a finding; it requires only that the district court consider the defendant's financial resource as -32- a factor in arriving at the figure." United States v. Newman, 49 _____________ ______ F.3d 1, 10 (1st Cir. 1995). We find that the sentencing court did not abuse its discretion by imposing restitution here. CONCLUSION CONCLUSION Based on the foregoing considerations, we affirm in affirm ______ part and reverse and remand in part. reverse remand _______ ______ So ordered. __________ -33-