**UNITED STATES of America, Plaintiff,**

v.

**Yamil H. KOURI–PEREZ (01); Jeannette Sotomayor–Vazquez (02); Angel L. Corcino–Mauras (03); Julio R. Corcino–Mauras (04); Juan E. Rizek–Nassar (05); Rafael A. Rizek–Nassar (06); Milagros Garcia–Leon (07); Armando Borel–Barreiro (08); Edgardo Rosario–Burgos (09), Defendants.**

No. Crim. 97–091(JAF).

United States District Court,
D. Puerto Rico.

Feb. 27, 1998.

Maria A. Dominguez, Asst. U.S. Atty., Guillermo Gil, U.S. Atty., San Juan, PR, for U.S.

Benny Frankie Cerezo, Rio Piedras, PR, for Kouri–Perez.

Francisco Rebollo–Casalduc, Mayaguez, PR, for Sotomayor–Vazquez.

Juan A. Pedrosa, for Angel Corcino–Mauras.

Jorge Arroyo–Alejandro, San Juan, PR, for Julio Corcino–Mauras.

Harry Anduze–Montaño, Hato Rey, PR, for Rafael Rizek–Nassar.

Miriam Ramos–Grateroles, Bayamon, PR, for Garcia–Leon.

Yolanda Collazo, Bayamon, PR, for Borel–Barreiro.

Marco Antonio Rigau, San Juan, PR, for Rosario–Burgos.

### MEMORANDUM ORDER

FUSTE, District Judge.

### I.

The impartial administration of justice requires that grand and petit jurors be selected by a fair system that eliminates or at least minimizes the risk of exemption and exclusion on impermissible grounds. To achieve that end, Congress adopted the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1869. The statute, which the Judicial Conference of the United States endorsed, 1967 Jud.Conf. Rept. 41–43, provides a uniform method for selecting grand and petit jurors in federal courts. The Act secures a certain degree of local flexibility by providing for each district court to adopt a jury selection plan consistent with section 1863 of the Act, 28 U.S.C. § 1863.

The statute incorporates two important principles: (1) random, selection of the names of jurors from voters' lists; and (2) determination of juror disqualifications, excuses, exemptions, and exclusions on the basis of objective criteria only. *United States v. Price*, 573 F.2d 356, 360 (5th Cir.1978).

The Jury Selection and Service Act provides that no citizen shall be excluded from jury service "on account of race, color, religion, sex, national origin, or economic status." The statute provides procedures that are intended to prevent such objectionable exclusions.

The District of Puerto Rico has in full force and effect a jury plan pursuant to the Jury Selection and Service Act of 1968. The current plan follows model plans proposed by the Administrative Office of U.S. Courts and the judges of this court approved it on September 1, 1996. It appears on file as a public document in Miscellaneous No. 96–112(PG).

The source of names for the master jury wheel is voter registration data generated by the Commonwealth government. From time to time, names are drawn at random from the master jury wheel, and each person whose name is drawn is sent a juror qualification form to fill out and return. 28 U.S.C. § 1864. A judicial officer then determines, on the basis of the information provided on the juror qualification form and any additional evidence, whether a person is unqualified, exempt or may be excused from jury service. 28 U.S.C. § 1865(a). The remaining names are placed in the qualified jury wheel, from which names are drawn at random as needed for assignment to grand and petit jury panels. 28 U.S.C. § 1866(a).

The statutory qualifications for jury service are straightforward. Prospective jurors must be at least eighteen years of age, must have resided for one year within the judicial

district, and be able to read, write, speak, and understand the English language. Those so qualified can serve as grand or petit jurors unless they are incapable of rendering jury service by reason of mental or physical infirmity, or have been convicted or charged with a felony in federal or state court and their civil rights have not been restored. 28 U.S.C. § 1865(b).

The local jury selection plan specifies those groups of persons or occupational classes whose members shall be barred from jury service on the ground that they are exempt. *See Local Jury Plan, pages 3–6, paragraphs 7–9, Exclusion, Excuse, or Exemption from Jury Service, Automatic Exemptions from Jury Service, and Discretional Excuses Upon Request.*

Regarding the statutory qualifications and the provisions of the jury plan, federal case law provides helpful directives to be followed by this District in dealing with the fact that the District of Puerto Rico exists in an entirely bilingual context, where one finds otherwise-qualified jurors who are not conversant in the English language and others who are fully conversant in both Spanish and English. A brief chronological mention of some of these decisions is in order.

In *Miranda v. United States,* 255 F.2d 9 (1st Cir.1958), the defendant contended that because persons who could not speak and understand the English language were systematically excluded from the grand jury, he could validly challenge the composition of the grand jury or petit jury. The Court of Appeals decided that the requirement of English proficiency for jury service in the District of Puerto Rico was clearly reasonable and indeed necessary to the proper function of the court as a member of the federal judicial system. The court found it essential that the judge, counsel, and all the jurors "[h]ave a working knowledge of [English] if the judicial machinery is to function effectively." *Id.* at 17.

In *United States v. Dejesus Boria,* 518 F.2d 368, 371 (1st Cir.1975), the Court of Appeals endorsed the previously-established principle, stating that "[w]e are of the opinion that the present system affords Spanish-speaking defendants their rights to due pro-

cess, a fair trial, the assistance of counsel, and the equal protection of the laws under the fifth, sixth, and fourteenth amendments." Relying on *Dejesus Boria,* the District Court stated in *United States v. Ojeda–Rios,* 714 F.Supp. 600 (D.P.R.1989), that "[o]ur own experience in criminal proceedings confirms the conclusion that the present system is not constitutionally infirm." *Id.* The district court proceeded to deny the defendant's motion to conduct the trial in the Spanish language. In *United States v. Aponte–Suarez,* 905 F.2d 483 (1st Cir.1990), the Court of Appeals considered English proficiency in the context of section 1865 of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1865(b)(2, 3). The Court of Appeals stated in clear and practical terms the following:

Appellants contend that the indictment was defective because the grand jurors were not proficient in English, that the petit jury also lacked proficiency and that they were entitled to demonstrate that proficiency in English among Puerto Rico residents is on the decline, with a corresponding adverse effect on juries in the District of Puerto Rico.

In order to claim the systematic exclusion of Puerto Rico residents from federal grand and petit juries, appellants bear the burden of showing (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). Appellants rely on newspaper accounts claiming a decline in English proficiency among the general population of Puerto Rico. Even if the accounts are accurate, resulting in a smaller pool of eligible jurors and a 'systematic exclusion' in the jury selection process, the overwhelming national interest served by the use of English in a United States court justifies conducting proceedings in the District of Puerto Rico in English and requiring ju-

rors to be proficient in that language. *United States v. Benmuhar*, 658 F.2d 14, 19 (1st Cir.1981).

Furthermore, appellants cannot point to any testimony given at the grand jury proceedings indicating that any of the grand jurors was deficient in English. Nor does the transcript of the trial indicate any instance where a juror complained of an inability to follow the proceedings. Moreover, no defense lawyer suggested to the judge that any juror appeared to have problems. Indeed, the selection process was routine with the court posing a number of questions and jurors responding correctly, demonstrating an adequate command of English. News reports are too thin a basis to challenge jury competence. 905 F.2d at 491–92 (footnotes omitted).

In 1992, the First Circuit reaffirmed the *Aponte–Suarez* decision, holding the English-only requirement of the federal jury selection system did not violate Fifth and Sixth Amendment rights of defendants in Puerto Rico on the theory that it effectively excluded two-thirds of the population of Puerto Rico.

A criminal defendant or the Attorney General of the United States may challenge compliance with the jury selection procedures, but must do so within seven days after the moving party discovered or, in the exercise of diligence, could have discovered, the grounds of challenge, and in any event before the *voir dire* examination begins. 28 U.S.C. § 1867(a, b). The challenge must be supported by a sworn statement of facts showing grounds for the challenge. 28 U.S.C. § 1867(d). Defendant, however, has an unqualified right to inspect jury lists, in order to determine whether there is a basis for the challenge. 28 U.S.C. § 1867(f). *United States v. Royal*, 100 F.3d 1019, 1023–26 (1st Cir.1996). Challenges are governed by an onerous burden of proof. Only if there has been a substantial failure to comply with the provisions of the Jury Selection and Service Act of 1968 can a challenge survive.

It is in the context of these general principles that the court considers the February 19 and 24, 1998, second and renewed motions for disclosure of jury records pursuant to 28 U.S.C. § 1867(f), filed by codefendant Yamil H. Kourí–Pérez, *Docket Documents Nos. 244 & 259*. See also *Docket Documents Nos. 70, 124, 136, and 180*, related thereto.

## II.

On September 8, 1997, the court entered a margin order in *Docket Document No. 70*, formally endorsing the rule of law that defendant Kourí–Pérez had an unqualified right to inspect jury records. *See Docket Documents Nos. 70 and 136. United States v. Royal*, 100 F.3d 1019, 1023–26 (1st Cir.1996). As a matter of fact, the September 8, 1997 entry of a margin order at *Docket Document No. 70* was not required for codefendant to commence the inspection of jury records. The Clerk's Office personnel are well-versed in the intricacies of the Jury Selection and Service Act of 1968 and their obligations under the law towards litigants. This is not the first jury challenge in this District in the recent past.

After receiving formal authorization to proceed, counsel for movant appointed an economist and statistician, Dr. Elías Gutiérrez, to perform the examination of jury records. The Chief Deputy Clerk, José M. Morales, was entrusted with the mission of representing the Clerk's Office during Dr. Gutiérrez' review of records. *See* Memorandum of José M. Morales, Chief Deputy Clerk, dated February 26, 1998, on the subject of jury challenge in Cr. 97–091(JAF), made part of this Memorandum Order as *Attachment "A"*. The memorandum contains a chronology of events regarding the participation of the Clerk's Office in the present jury challenge. The following is the relevant text of the memorandum.

"1. On September 8, 1997, the court granted codefendant Yamil Kourí–Pérez' motion for disclosure of documents in connection with the jury process.

2. On or about mid-September 1997, Dr. Elías Gutiérrez called my office and informed he was the person commissioned by attorney Benny Frankie Cerezo for the retrieval of the jury information and to prepare an statistical evaluation of the

data. At that time we agreed to meet on September 30, 1997.

3. On September 30, 1997, at 10:00 A.M., Dr. Gutiérrez visited my office with two persons, one of whom I remember was Rocío Montalvo. A meeting was held and, as a matter of information, I explained to them the jury selection procedure established in our District. A copy of the court's jury plan was made available. I also showed Dr. Gutiérrez the extraction list for the voters' registration which composes our master jury wheel for the ongoing period. Dr. Gutiérrez inquired as to what other data we had available. At that time, I showed him the jury questionnaires. He was informed that not all data collected in the questionnaires was electronically tabulated.

4. Dr. Gutiérrez requested certain data from the master jury wheel list, consisting of juror ID number, city of residence, zip code, and date of birth. Dr. Gutiérrez also requested minutes of proceedings of the orientation and qualification sessions for the grand jury group 97–1, which was the grand jury that originally indicted the defendants. In addition, the list of persons summoned for the orientation and qualifications session of February 19, 1997 was requested. I also offered the list of precincts with electoral participation in the 1992 general elections. This is used to verify that the court's sampling corresponds to the electoral data underlying the master jury wheel. The Clerk's Office also made available the individual jury questionnaires with complete information, but Dr. Gutiérrez opted to only receive tabulated data. The jury questionnaires were too many in number, approximately 50,000 forms.

5. At the conclusion of the September 30, 1997 meeting, I asked Dr. Gutiérrez to discuss with attorney Cerezo any other particular need and to specifically request those items needed from the documentation available.

6. On or about October 8, 1997, I received a letter from attorney Cerezo, copy of which is enclosed. Reference was made to the earlier requests contained in the mo-tion filed with the court on June 10, 1997, to which the government expressed no objection on August 14, 1997. Reference was also made to the supplemental memorandum to the court filed August 4, 1997. Attorney Cerezo asked the undersigned to deliver the requested materials to Dr. Gutiérrez.

7. On November 4, 1997, I telephoned Dr. Gutiérrez' office and spoke to Rocío Montalvo. I informed Ms. Montalvo that the requested data was ready for delivery. Later that morning, Dr. Gutiérrez telephoned me and requested that the addresses of the jurors be included in the floppy disk that I was about to turn over to him. I informed Dr. Gutiérrez that I would need a few more days to comply with his additional request. On November 25, 1997, I telephoned Dr. Gutiérrez informing that the original and additional data was ready for delivery. On December 2, 1997, Dr. Gutiérrez picked up the data we had agreed to provide. A receipt was prepared, signed, and filed.

This was my last communication with Dr. Gutiérrez or attorney Cerezo's office on the subject of the requested information.

8. On December 20, 1997, *El Nuevo Día* reported at page 23 on the particulars of a challenge to the composition of the master jury wheel by codefendant Kourí. Since I was not aware of any additional request for information, the record was examined and the defendant's motion filed December 18, 1997 was found and referred to the presiding judge. The motion requested transcripts of the general impanelment sessions conducted during the relevant period by all magistrate judges and two district judges, as well as all records and documents containing information related to sex, race, education, and economic status.

9. The presiding judge instructed me to search for any additional information that had been electronically tabulated and the jury clerk was able to retrieve information and produce a report on race data. The court made such information available through a memorandum to counsel, filed February 17, 1998. The court informed

counsel that of the four categories: Race, sex, education, and economic status, only information on race was available from computerized information and noted that economic status is not part of the qualifications questionnaire. Regarding the [sex] and education categories, which are part of the qualifications questionnaire, there is no official requirement that the data be electronically tabulated.

10. Since September 8, 1997, the jury questionnaires have been available for inspection and copying. The minutes of the jury orientation and qualification sessions have also been available since September 8, 1997, and as of this date there has been no specific request for transcripts addressed to the court reporters. The information on sex or gender appears from the questionnaires and, in reference to the new master jury wheel, the same will be electronically tabulated. The information on juror educational background appears from the juror qualification questionnaire."

The Memorandum subscribed by Chief Deputy Clerk Morales, containing the above-transcribed text consisting of ten numbered paragraphs, has been filed by the court.

On February 17, 1998, the court addressed a repeated request by codefendant Yamil Kourí–Pérez for additional jury pool statistical data, including race, sex, education, and economic status, and of the four mentioned categories, information on race was made available. *See Docket Document No. 233.* In the court's Memorandum to Counsel, entered February 17, 1998, the court notified counsel that the information on gender and educational level, although contained in the qualification questionnaire, was not electronically tabulated in the computer programming used to manage the jury pool. Counsel was notified that information regarding economic status was not sought in the juror qualification questionnaire. In addition, the court advised counsel that the Administrative Office of U.S. Courts' policy only requires the clerks of district courts to survey a minimum of three-hundred qualification questionnaires on which the potential jurors responded to question number 10 on race, with an obligation to tabulate the race data within six months of refilling the master jury wheel. The Administrative Office of U.S. Courts does not require district courts to submit to the Administrative Office the data on race; however, the clerk must collect it. All the racial data that had been available to counsel from day one was made available by the court to counsel.

### III.

Not satisfied with the production made by the Clerk's Office, counsel for codefendant Kourí–Pérez filed, on February 24, the renewed motion for disclosure of jury records. Counsel specifically requested the transcripts of the general impaneling session conducted during the relevant period by all magistrate judges and two district court judges, as well as all records and documents involving demographic information related to sex, race, education, and economic status. Movant complained that the court's Memorandum to Counsel of February 17, 1998, *Docket Document No. 233,* did not address defendant's request for the transcripts of the impaneling sessions and insisted on his unqualified right of access to juror questionnaires and jury impaneling session transcripts under 28 U.S.C. § 1867(f).

Regarding the renewed petition, movant fails to realize that this court has provided an unqualified access to all jury selection information. The court, however, is not required by the relevant Act of Congress actually to carry out defendant's investigation of jury data and to submit it in a digested form to movant. The race information has been provided. The information on sex has been available to Dr. Gutiérrez from the juror qualification questionnaires since September 30, 1997. This information is not electronically tabulated because there is no such requirement. Counsel has been made aware of this fact. Information on education is also available from the questionnaires and the data on the economic status of the individual potential jurors is simply not available. Counsel has received notice to that effect.

Regarding transcripts of proceedings, counsel has failed to comply with 28 U.S.C. § 753(b). Upon request of any party to any proceeding which has been recorded, and

who has agreed to pay the fee therefor, the court reporter shall promptly transcribe the original records of the requested parts of the proceedings and attach to the transcript his official certificate, and deliver the same to the party making the request. In this district, the practice under the local rules is that orders for transcripts must be placed directly with the court reporters on Administrative Office of U.S. Courts and First Circuit-provided forms A0435 and CA–1–10. *See also Local Rule 108.* Since September 30, 1997, the minutes of proceedings of jury impaneling sessions have been available to movant. Minutes of proceedings contain the name of the court reporter. Such information can be easily ascertained and the Clerk's Office cannot be faulted for movant's failure to request the pertinent transcripts according to the usual practice and procedure.

### IV.

To conclude, the February 19 and 24, 1998 second and renewed motions for disclosure of jury records pursuant to 28 U.S.C. § 1867(f) are **denied,** since the Clerk's Office has given unqualified access to jury records as required by law.

**IT IS SO ORDERED.**

*ATTACHMENT "A"*

**MEMORANDUM**

Date:   February 26, 1998

Reply to   /s/ J. Morales

Attn of:   José M. Morales,
Chief Deputy Clerk

Subject:   **JURY CHALLENGE
CR. 97-091 (JAF)**

To:   Hon. José A. Fusté,
U.S. District Judge

This is the chronology of events regarding the participation of the Clerk's office in the jury challenge by codefendant Kourí–Pérez in this case:

1.   On September 8, 1997, the court granted codefendant Yamil Kourí–Pérez' motion for disclosure of documents in connection with the jury process.

2.   On or about mid-September 1997, Dr. Elías Gutiérrez called my office and informed he was the person commissioned by attorney Benny Frankie Cerezo for the retrieval of the jury information and to prepare an statistical evaluation of the data. At that time we agreed to meet on September 30, 1997.

3.   On September 30, 1997, at 10:00 A.M., Dr. Gutiérrez visited my office with two persons, one of whom I remember was Rocío Montalvo. A meeting was held and, as a matter of information, I explained to them the jury selection procedure established in our District. A copy of the court's jury plan was made available. I also showed Dr. Gutiérrez the extraction list for the voters' registration which composes our master jury wheel for the ongoing period. Dr. Gutiérrez inquired as to what other data we had available. At that time, I showed him the jury questionnaires. He was informed that not all data collected in the questionnaires was electronically tabulated.

4.   Dr. Gutiérrez requested certain data from the master jury wheel list, consisting of juror ID number, city of residence, zip code, and date of birth. Dr. Gutiérrez also requested minutes of proceedings of the orientation and qualification sessions for the grand jury group 97–1, which was the grand jury that originally indicted the defendants. In addition, the list of persons summoned for the orientation and qualifications session of February 19, 1997 was requested. I also offered the list of precincts with electoral participation in the 1992 general elections. This is used to verify that the court's sampling corresponds to the electoral data underlying the master jury wheel. The Clerk's Office also made available the individual jury questionnaires with complete information, but Dr. Gutiérrez opted to only receive tabulated data. The jury questionnaires were too many in number, approximately 50,000 forms.

5.   At the conclusion of the September 30, 1997 meeting, I asked Dr. Gutiérrez to discuss with attorney Cerezo any other particular need and to specifically request those items needed from the documentation available.

6. On or about October 8, 1997, I received a letter from attorney Cerezo, copy of which is enclosed. Reference was made to the earlier requests contained in the motion filed with the court on June 10, 1997, to which the government expressed no objection on August 14, 1997. Reference was also made to the supplemental memorandum to the court filed August 4, 1997. Attorney Cerezo asked the undersigned to deliver the requested materials to Dr. Gutiérrez.

7. On November 4, 1997, I telephoned Dr. Gutiérrez' office and spoke to Rocío Montalvo. I informed Ms. Montalvo that the requested data was ready for delivery. Later that morning, Dr. Gutiérrez telephoned me and requested that the addresses of the jurors be included in the floppy disk that I was about to turn over to him. I informed Dr. Gutiérrez that I would need a few more days to comply with his additional request. On November 25, 1997, I telephoned Dr. Gutiérrez informing that the original and additional data was ready for delivery. On December 2, 1997, Dr. Gutiérrez picked up the data we had agreed to provide. A receipt was prepared, signed, and filed.

This was my last communication with Dr. Gutiérrez or attorney Cerezo's office on the subject of the requested information.

8. On December 20, 1997, *El Nuevo Día* reported at page 23 on the particulars of a challenge to the composition of the master jury wheel by codefendant Kourí. Since I was not aware of any additional request for information, the record was examined and the defendant's motion filed December 18, 1997 was found and referred to the presiding judge. The motion requested transcripts of the general impanelment sessions conducted during the relevant period by all magistrate judges and two district judges, as well as all records and documents containing information related to sex, race, education, and economic status.

9. The presiding judge instructed me to search for any additional information that had been electronically tabulated and the jury clerk was able to retrieve information and produce a report on race data. The court made such information available through a memorandum to counsel, filed February 17, 1998. The court informed counsel that of the four categories: Race, sex, education, and economic status, only information on race was available from computerized information and noted that economic status is not part of the qualifications questionnaire. Regarding the gender and education categories, which are part of the qualifications questionnaire, there is no official requirement that the data be electronically tabulated.

10. Since September 8, 1997, the jury questionnaires have been available for inspection and copying. The minutes of the jury orientation and qualification sessions have also been available since September 8, 1997, and as of this date there has been no specific request for transcripts addressed to the court reporters. The information on sex or gender appears from the questionnaires and, in reference to the new master jury wheel, the same will be electronically tabulated. The information on juror educational background appears from the juror qualifications questionnaire.

# Frankie Cerezo

ESTUDIO DE ABOGADOS
LAW OFFICES

October 8, 1997
San Juan, Puerto Rico

José M. Morales, Chief Deputy Clerk
Clerk's Office
Room 150, Federal Building
Carlos Chardón Avenue
Hato Rey, Puerto Rico 00918-1767

Re: U.S. v. Yamil Kourí, et als

Dear Mr. Morales:

Enclosed please find a copy of our request for the disclosure of documents in connection with the jury selection process. As it appears from said copy, our request was granted by Judge José Antonio Fusté.

It is also included a prosecution's motion in response to our request in which the government states that it has no objection to the Court permitting disclosure of the requested material.

Therefore, we feel no further motions on behalf of our request are neccesary. So, please have the requested material delivered to Dr. Elías Gutiérrez. He will contact you on this matter soon.

Thanking you in advance.

P O BOX 363745
SAN JUAN, P.R.
00936-3745

848 HOSTOS
HYDE PARK
RIO PIEDRAS, PUERTO RICO
00927-4216

(787) 758-8013
(787) 758-8014