UNITED STATES of America,
Plaintiff–Appellee,

v.

Brenda Jane PLUMLEY,
Defendant–Appellant.

No. 92–5830.

United States Court of Appeals,
Fourth Circuit.

Argued March 30, 1993.

Decided May 25, 1993.

arrest of Fountain leading to the charges was    valid.

Leonard A. Kaplan, Asst. Federal Public Defender, Charleston, WV, argued (Hunt L. Charach, Federal Public Defender, on brief), for appellant.

R. Brandon Johnson, Asst. U.S. Atty., Charleston, WV, argued (Michael W. Carey, U.S. Atty., on brief), for appellee.

Before ERVIN, Chief Judge, and WIDENER and HAMILTON, Circuit Judges.

## OPINION

PER CURIAM:

After pleading guilty to conspiracy to commit bank robbery, 18 U.S.C. § 371, Brenda Jane Plumley was sentenced to twelve months' imprisonment and three years' supervised release, and ordered to pay $10,709 in restitution to Whitesville State Bank. Plumley appeals that part of her sentence requiring her to pay restitution. For the reasons stated herein, we remand the case to the district court for that court to make specific findings as required by *United States v. Bruchey*, 810 F.2d 456 (4th Cir.1987).

I

On February 22, 1989, Plumley and her boyfriend, George David Lane, agreed to rob the Glen Daniel branch of the Whitesville State Bank in Glen Daniel, West Virginia. After obtaining her mother's car, Plumley drove Lane to a store where Lane purchased shoe polish and a pair of stockings. The couple returned to Plumley's mother's house where Lane obtained two pistols from Plumley, put the shoe polish on his face, and the stocking over his head. Plumley then drove Lane to the Whitesville State Bank. With Plumley remaining in the car, Lane entered the bank, approached a teller, and demanded cash in a bag which Lane handed her. While awaiting the teller's compliance, Lane fired a shot which struck the ceiling of the bank. The teller gave Lane $10,709. Lane exited the bank, entered the car in which Plumley was waiting, and the couple drove off.

Approximately six months later, Plumley was apprehended by Agent Sean Cassidy of the FBI in an area near Beckley, West Virginia. Plumley assisted the FBI in the apprehension of Lane. Plumley was charged in a single-count information with conspiracy to commit bank robbery in violation of 18 U.S.C. § 371. Plumley entered into a plea agreement in which she agreed to plead guilty.

A Presentence Investigation Report (PSI) was prepared by a United States Probation Officer. The PSI recommended a total offense level of twenty and a Criminal History Category of II, yielding a sentencing range of thirty-seven to forty-six months. That total offense level included: a base offense level of eighteen pursuant to U.S.S.G. §§ 2X1.1 and 2B3.1; a one level increase for the amount of loss pursuant to U.S.S.G. § 2B3.1(b)(1)(C); a five level increase for the discharge of a firearm pursuant to U.S.S.G. § 2B3.1(b)(2)(A); a two level reduction for role in the offense pursuant to U.S.S.G. § 3B1.2(b); and a two level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The PSI noted that Plumley had a negative net worth of $2,168 and a negative net monthly cash flow of $256. The PSI further stated that "Counsel for the defendant notes that Ms. Plumley is willing to make restitution to Whitesville State Bank; however no restitution is noted in the written plea agreement." Joint Appendix (J.A.) at 11.

At sentencing, Plumley objected to the firearm enhancement, the enhancement for her role in the offense, and claimed that the district court should depart downward on the basis of Lane's abusive behavior toward her. The district court overruled defendant's objections. The district court however granted the government's motion to depart downward on the basis of Plumley's substantial assis-

tance in the apprehension of Lane and sentenced her to twelve months' imprisonment and three years' supervised release.

The district court also ordered restitution in the amount of $10,709. In making this determination, the district court adopted the findings of the PSI relating to Plumley's earning capacity, net worth, and net monthly cash flow. In ordering restitution, the district court stated:

> I realize that this order of restitution seems harsh considering the financial status of the defendant at this time. However, during the term of supervision that I intend to place Miss Plumley on, you should be able to make payments which will not infringe upon providing for your welfare or that of your children.
>
> I will not impose a fine in this case because the defendant does not have the financial ability to make restitution and pay a fine.

J.A. at 91. In addition, the district court stated:

> in the event that George David Lane is finally adjudicated guilty of the bank robbery, the $10,709.00 in restitution shall be divided equally between Miss Plumley and Mr. Lane. However, each defendant shall be jointly and severally responsible for repayment.

J.A. at 90. Plumley made no objection at sentencing to the order of restitution. She now appeals the order of restitution.

## II

Plumley attacks her restitution on two grounds. We shall address each argument separately.

### A

■ Plumley's first argument is that the district court did not have the statutory authority to order restitution for her conduct under the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–3664.[1] We disagree. A district court is authorized to order a defendant to make restitution to any "vic-

tim" of, among other things, a Title 18 offense. 18 U.S.C. § 3663(a)(1). For conspiracy offenses, " 'victim' . . . means any person directly harmed by the defendant's criminal conduct in the course of the . . . conspiracy. . . ." 18 U.S.C. § 3663(a)(2). At argument, Plumley conceded that her actions injured the bank, but argued that her actions did not directly harm the bank because she did not rob the bank, but rather Lane did.

In this case, Plumley first conspired with Lane to rob the Whitesville State Bank. Second, she drove Lane to a local store in order for Lane to acquire certain items that would assist him in the robbery. Third, Plumley drove Lane back to her mother's house and provided Lane with two loaded weapons. Fourth, Plumley drove Lane to the bank and waited for Lane in the car while he robbed the bank. Fifth and finally, Plumley drove Lane away from the bank to avoid his apprehension. We believe that the district court had the statutory authority to order restitution in this case because as a member of the conspiracy, Plumley was liable for all of the actions of her co-conspirators in furtherance of the conspiracy. *See United States v. Chaney*, 964 F.2d 437 (5th Cir.1992) (permitting *Pinkerton* liability with regard to restitution where the defendant's conduct was part of a continuing conspiracy and inextricably related to the losses suffered). Stated differently, Plumley's conduct during the course of the conspiracy unquestionably caused direct harm to Whitesville State Bank.[2]

### B

Plumley also contends that the district court's methodology in ordering restitution in this case ran afoul of this court's decision in *Bruchey*. We agree.

The imposition of restitution is governed by 18 U.S.C. § 3664(a), which requires that the district court, "in determining whether to

---

1. The VWPA was originally codified as 18 U.S.C. §§ 3579–80. It was redesignated as 18 U.S.C. §§ 3663–64 as part of the Sentencing Reform Act of 1984, effective November 1, 1987.

2. Plumley seeks to distinguish *Chaney* on the ground that it was decided before the enactment

of § 3663(a)(2). This is not a relevant distinction at all. Nothing in the plain language of § 3663(a)(2) or its legislative history suggests that § 3663(a)(2) usurps the settled principle that a criminal defendant who participates in a conspiracy is liable in restitution for all losses flowing from that conspiracy.

order restitution ... and the amount of such restitution, shall consider ... the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents...." The district court must make explicit findings as to those factors enumerated in 18 U.S.C. § 3664(a) and such findings should be keyed to the specific type and amount of restitution ordered. *Bruchey*, 810 F.2d at 459.

■ We are not persuaded by the government's argument that the dictates of *Bruchey* were complied with. We believe the district court's findings were far afield of explicit on the issue of the defendant's ability to pay as required by *Bruchey*. The information in the PSI which the district court adopted indicated that Plumley had a negative net worth and a negative monthly cash flow. Ostensibly from this information in the PSI, the district court concluded that Plumley "should be able to make payments" during the period of her supervised release. J.A. at 91. In reaching this conclusion, the district court made no attempt to key Plumley's financial resources, financial needs, and earning ability to an amount of restitution. Consequently, the district court's order of restitution cannot stand under *Bruchey*. Accordingly, we remand the case to the district court to make explicit findings as required by *Bruchey*.

### III

To sum up, the district court had the statutory authority to impose restitution in this case. However, the district court's methodology for imposing restitution did not comply with this court's decision in *Bruchey*. For that reason, we remand the case to the district court to make the appropriate findings before imposing restitution.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*