**UNITED STATES, Appellee,**

v.

**Adam COLLINS, a/k/a Thomas Smith, a/k/a William Getchell, a/k/a Chas Norton, Defendant, Appellant.**

**No. 98–2368.**

United States Court of Appeals, First Circuit.

Heard Aug. 3, 1999.

Decided Dec. 27, 1999.

* Of the Eleventh Circuit, sitting by designation.

Leo T. Sorokin, Federal Defender Office, with whom Elizabeth L. Prevett, Federal Defender Office, was on brief, for appellant.

Joshua Levy, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

Before TORRUELLA, Chief Judge, HILL* and CYR, Senior Circuit Judges.

HILL, Senior Circuit Judge.

The defendant was convicted of conspiracy to commit bank fraud, mail fraud, bank fraud, and counterfeiting and was sentenced to pay restitution in an amount equal to the total loss to all the victims of the scheme. Defendant appeals the restitution order.

**I.**

Adam Collins, along with several others, was convicted of conspiracy to commit bank fraud as well as several substantive counts including bank fraud, mail fraud, and counterfeiting. These charges arose from a scheme in which the conspirators obtained the account numbers of legitimate businesses, ordered checks with the company names and account numbers, and cashed them at check cashing facilities, supermarkets, and banks.

In the Indictment, Collins was alleged to have obtained the copies of checks issued by the legitimate businesses, placed the orders for new checks drawn on these businesses' accounts, arranged for them to be sent to a leased mailbox, gathered other conspirators to obtain false identification from agencies such as the Division of Motor Vehicles, issued checks payable to these false identifications, and employed co-conspirators to go out and cash these

checks at various stores, supermarkets and check cashing establishments. The Indictment also names the specific co-conspirator who is alleged to have cashed specific individual checks.

In December of 1997, Collins pled guilty to a single count of conspiracy to commit bank fraud. At the plea hearing, the government stated that the conduct of the defendant in the conspiracy consisted of the cashing of a counterfeit check in the amount of $302.53 and the cashing with co-defendants and others of at least 67 fraudulent checks. In its summary of the evidence against Collins, the government included all the checks cashed by the conspirators. Collins objected.

In the Presentence Report (PSR), Collins' various check cashings were detailed. The first of some 96 checks was cashed by Collins on May 17, 1991, and the last on August 2, 1995. The PSR listed eight companies whose checks were counterfeited and cashed by Collins. It stated that he went out to cash checks with other co-conspirators who were cashing checks under these same company names, and calculated his base offense level according to the losses attributable to all of the checks cashed in the names of the eight companies. The total amount of these checks cashed was $158,150.

The PSR also stated that five other individuals involved cashed checks totaling $132,880, and that these checks had names of companies other than those on the checks cashed by Collins. In the "Victim Impact" section, the PSR stated that the total loss to victims of all check-cashing alleged in the Indictment for whom the government had been able to determine names and addresses was $274,278.67, and

concluded that this loss was attributable to each conspirator.

Collins objected, asserting that the loss calculation for "restitution can only be ordered for persons directly harmed by defendant's criminal conduct in the course of the ... conspiracy" citing 18 U.S.C. § 3663(a)(2). The government argued that the amounts of checks cashed by individuals about whose check cashing the defendant was aware should be added to the $158,150 figure as a loss "reasonably foreseeable" to Collins.

 The district court ordered restitution in the full amount and Collins appealed. We review the legality of the order of restitution *de novo*.[1] *United States v. Rostoff*, 164 F.3d 63, 66 (1st Cir.1999).

## II.

Prior to 1990, the Victim Witness Protection Act (VWPA or the Act), 18 U.S.C. § 3663, provided that the sentencing court "may order ... the defendant [to make] restitution to any victim of [the] offense." In 1990, the Supreme Court held that this language limited restitution orders to the loss caused by the specific offense which formed the basis for the defendant's conviction. *Hughey v. United States*, 495 U.S. 411, 414, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (restitution may be ordered only for loss caused by one count of unauthorized use of credit card to which defendant plead guilty; not for three remaining counts in the indictment).

 In response, Congress amended the VWPA to provide that a defendant is liable for restitution to:

a person directly and proximately harmed as a result of the commission of an offense for which restitution may be

---

1. The district court declined to consider the legality of its restitution order because, in its view, the order was not "ripe for review" noting that it was unlikely that defendant would be able to pay any amount in restitution. A restitution order is reviewable on appeal even if it is uncertain whether the defendant will ever be able to pay the restitu-

tion. *United States v. Phaneuf*, 91 F.3d 255, 264 (1st Cir.1996) (order reviewable even though defendant can later seek a modification of the order in the sentencing court on the grounds that he cannot pay). *See also United States v. D'Andrea*, 107 F.3d 949, 959 (1st Cir.1997).

ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2)(Supp. III 1997). With the 1990 amendment, Congress broadened the scope of restitution from losses attributable solely to the offense of conviction to all losses caused in the course of a defendant's criminal conduct, whether the defendant is convicted of each of those offenses or not. *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir.1996).

■ Collins agrees that Congress broadened the scope of restitution from offenses of conviction to all offenses involved in a prosecution. He contends, however, that Congress did not intend to broaden the scope of restitution from the conduct of the *defendant* to the conduct of *others*. He argues that the amendment's reference to the harm "directly" caused by the defendant's criminal conduct is language of limitation, intended to proscribe liability for the conduct of others, even if they are co-conspirators. Although he cites no authority for this proposition, he argues that the plain meaning and principles of leniency require this interpretation.

We disagree. The Fourth and Tenth Circuits have specifically rejected this interpretation of the amendment's "directly harmed" language. *United States v. Nichols*, 169 F.3d 1255 (10th Cir.1999); *United States v. Plumley*, 993 F.2d 1140 (4th Cir. 1993). In *Plumley*, the Fourth Circuit rejected the defendant's argument that she did not "directly harm" a robbed bank as required by the 1990 amendment because she only drove the getaway car. The court reasoned that:

Nothing in the plain language of § 3663(a)(2) or its legislative history suggests that § 3663(a)(2) usurps the settled principle that a criminal defendant who participates in a conspiracy is liable in restitution for all losses flowing from that conspiracy.

993 F.2d at 1142 n. 2.

Relying on *Plumley*, the Tenth Circuit rejected a similar argument that the "directly harmed" language precludes restitution if the harm is caused by a co-conspirator. *Nichols*, 169 F.3d at 1278. In that case, Nichols contended that the district court could not order him to pay restitution to the General Services Administration for the bombing destruction of the Murrah building in Oklahoma City because he did not place and detonate the bomb. He specifically argued that prior cases holding a co-conspirator liable for all the reasonably foreseeable losses caused by a conspiracy were not controlling because they do not address the 1990 amendments to the VWPA.

In upholding the district court's restitution order, the Tenth Circuit rejected this argument, noting that the "directly harmed" language in the 1990 amendments does not change the settled rule that "losses caused by the entire conspiracy, not just losses caused by those acts committed by the defendant, can be attributed to the defendant when the district court orders restitution." *Id.* (citing *United States v. Brewer*, 983 F.2d 181, 185 (10th Cir.1993)).

We have previously held that each conspirator may be ordered to pay restitution for all the reasonably foreseeable losses caused by any conspirator in the course of the conspiracy. *United States v. Royal*, 100 F.3d 1019, 1032 (1st Cir.1996). In *Royal*, the defendant was convicted of mail fraud and conspiracy to commit mail fraud and ordered to pay restitution in an amount greater than the sum of the four fraudulent loan checks he actually mailed. In upholding the restitution order, we said:

In the sentencing context, one convicted of conspiracy may be held liable for the acts of his co-conspirators in furtherance of the conspiracy that are reasonably foreseeable.... Thus, the district court may order Royal to pay restitution not only for an amount equivalent to the

four student loan checks involved in the mail fraud counts, *but also for any other reasonably foreseeable loss caused by Royal or his co-conspirators acting in furtherance of this conspiracy.*

*Id.* (emphasis added). The 1990 amendments to the VWPA did nothing to change this result. *See United States v. Davis,* 117 F.3d 459 (11th Cir.1997) (not plain error to award restitution on each member in conspiracy based on the acts of all); *United States v. Lewis,* 104 F.3d 690, 693 (5th Cir.1996) (defendant responsible for entire amount of loss caused by conspiracy regardless of whether he personally participated in each illegal transaction); *United States v. Chaney,* 964 F.2d 437 (5th Cir. 1992) (permitting Pinkerton liability with regard to restitution where defendant's conduct was part of a conspiracy and inextricably related to the losses suffered). Contrary to Collins' theory, the amendments merely reaffirmed that Congress intends the Act to permit the federal courts to order full restitution to all victims of a criminal course of conduct.

Collins distinguishes the authority cited above by arguing that these orders of restitution were upheld because they were imposed on defendants who played "major roles" in their conspiracies. We can find no support for this argument in any of the cases cited above, the language of the statute, or the legislative history. In the context of a conspiracy, it is clear that a defendant is liable in restitution to all the victims of the reasonably foreseeable acts of his co-conspirators. No court has ever held to the contrary.

### III.

A defendant in a conspiracy is liable for all the reasonably foreseeable loss caused to the victims of the conspiracy. Accordingly, the order of restitution in this case is **AFFIRMED.**