Phelps v. Optima Health, Inc.          CV-99-227-JD  09/15/00
                UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


Simonne Phelps

      v.                                  Civil No. 99-227-JD
                                          Opinion No. 2000 DNH 195
Optima Health, Inc. and
Catholic Medical Center


                            O R D E R


      The plaintiff, Simonne Phelps, brings claims under Title I

of the Americans with Disabilities Act and the Rehabilitation Act

against Catholic Medical Center ("CMC") and Optima Health, Inc.

after she was dismissed from her position as a nurse in the

rehabilitation unit at CMC.  Phelps contends that the defendants

dismissed her because of her disability, a back condition that

required her to avoid heavy lifting, although she was able to

perform the essential functions of her job.  The defendants move

for summary judgment, asserting that Phelps cannot prove her

claims.


                        Standard of Review

      Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). A party opposing a properly supported motion for summary judgment must present record facts showing a genuine issue for trial to avoid judgment in the moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).


## Background

Simonne Phelps received her bachelor's degree in nursing from University of New Hampshire in 1979 and was hired as a staff nurse by CMC in the same year. In 1983, she injured her back at work while assisting a patient. Since that time she has been restricted from lifting more than fifteen or twenty pounds occasionally and has other restrictions on her physical activities due to her back condition. She left her employment at CMC at the time of her injury, and after a period of disability, she resumed working as a nurse for other employers.

In 1989, CMC hired Phelps as a per diem relief nurse in the

rehabilitation unit. At that time, the rehabilitation unit had staffing needs related to an upcoming certification process. The nurse manager for the unit, Lorraine Simon, knew of Phelps and created the position of medication nurse, structured to accommodate Phelps's physical limitations, to fill the staffing need. Because of Phelps's physical limitations, her duties were described in the new job as "[t]eam medicine nurse, [d]ocumentations of nursing interventions, [t]ranscription of orders, [a]ssist in feeding of patients, [and] [a]ssist in family teaching." Pl. Ex. G. She was to avoid lifting or pulling patients and prolonged bending or lifting. See id. Phelps's job involved administering medicines to all of the patients on the unit and, unlike all of the other nurses, she did not have patients assigned to her.

In late 1994 or early 1995, Phelps began working jointly with her twin sister, Suzanne Lemire, who had worked at CMC since 1983 and was the clinical nurse leader for her shift. As part of their arrangement, Phelps and Lemire each had the standard patient assignment, like the other nurses on the unit, but Lemire did all of the lifting for their patients while Phelps did the non-lifting tasks. Lorraine Simon approved their job-sharing arrangement, although Phelps's new job-sharing position was not reported to the human resources department at CMC. Working with

3

her sister, Phelps functioned as a staff nurse on the unit, although she was part-time rather than full-time, except that she did not do the patient care that required lifting.  The staff nurse job was a clinical nurse I position.

In June of 1997, a new nurse manager, Jeanne Wolfendale, was hired for the unit.  Wolfendale questioned Phelps's ability to perform the functions of her position because of her physical restrictions.  During the summer of 1997, Wolfendale investigated Phelps's disability and asked Phelps to provide a more recent physician's report on the extent of her physical restrictions to see if she would be able to lift up to fifty pounds, as required by the clinical nurse I job description.  Phelps's physician then reported that she could lift up to twenty pounds frequently, although Phelps has since admitted that was an overly optimistic evaluation.

Because of her physical limitations, Phelps was dismissed from her job on the rehabilitation unit on October 27, 1997.  On the same day, immediately after she was notified of her dismissal, Phelps met with an Optima Health assistant human resources manager, Vicki L'Heureux, who reviewed the list of posted vacancies, explained the process of applying for an internal transfer, and provided guidance on applying for an external position.  Phelps explained that she wanted a job at CMC

4

with the same part-time hours that she had worked on the rehabilitation unit and without a reduction in pay. L'Heureux offered Phelps an "Ask a Nurse" position that Phelps refused because the job required sitting in front of a computer and was located at Elliott Hospital. Phelps and L'Heureux spoke on the telephone twice after the meeting. L'Heureux offered Phelps another position, as a case manager, but Phelps also turned down that job because the hours did not fit her schedule and because it would decrease her pay. Phelps was not hired in another position with Optima Health, and her employment was terminated in February of 1998.

## Discussion

Phelps brings claims under Title I of the ADA and § 504 of the Rehabilitation Act, seeking a declaratory judgment, reinstatement in her position at CMC, and damages. To prove her claims, Phelps must establish "first, that she was disabled within the meaning of the Act; second, that with or without reasonable accommodation she was a qualified individual able to perform the essential functions of the job; and third, that the employer discharged her because of her disability."[1] Garcia-

---

[1]Claims under Title I of the ADA and § 504 of the Rehabilitation Act are analyzed under the same standards. See

5

Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir. 2000) (quotation omitted). For purposes of summary judgment, it appears to be undisputed that Phelps's back condition, which limits her ability to lift, is a disability within the meaning of the ADA and Rehabilitation Act and that she was dismissed because of that disability. The parties dispute what constituted the essential functions of Phelps's job and whether she could perform her job with reasonable accommodation.

"An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability'--that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of her job." Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 806 (1999) (quoting 42 U.S.C.A. § 12111(8)). The essential function and reasonable accommodation components are interrelated so that the analysis of whether a party is a "qualified individual" is divided into two steps: "(1) whether the employee could perform the essential functions of the job; (2) if not, whether any reasonable accommodation by the employer would enable him to perform those functions." Ward v. Massachusetts Health Research Inst., Inc., 209 F.3d 29, 33 (1st Cir. 2000) (quotation omitted).

--------

E.E.O.C. v. Amego, Inc., 110 F.3d 135, 143 (1st Cir. 1997).

6

A. Essential Functions

"An essential function is a fundamental job duty of the employment position the individual with a disability holds or desires." Ward, 209 F.3d at 34 (quotation omitted); see also 29 C.F.R. 1630.2(n)(1). The employer bears the burden of proving that a particular job function is essential. See Ward, 209 F.3d at 35. To carry the burden, the employer may rely on its own judgment as to which job functions are essential, which is entitled to deference by the court, and may also introduce written job descriptions, work experiences in the same or similar jobs, the time spent in the job performing the function, and the consequences of not requiring performance of the function. See Laurin v. Providence Hosp., 150 F.3d 52, 57 (1st Cir. 1998).

It appears to be undisputed that Phelps was working in a clinical nurse I position, shared with her sister, at the time her employment was terminated.[2] The defendants assert that heavy lifting was an essential function of the job that Phelps and Lemire shared. The defendants rely on the clinical nurse I

_____

[2]The evidence of record indicates that Phelps left the medication nurse position, for which she was originally hired in 1989, when she began to job share with her sister, Suzanne Lemire, in late 1994 or 1995. Phelps testified that in her job-sharing position she worked as a staff RN with her sister. Phelps has not challenged her job designation in the job-sharing position as clinical nurse I.

7

position's written description and the deposition testimony of Phelps and her sister, that heavy lifting was an essential function of the job. Phelps testified in her deposition that the ability to lift patients had always been an "essential job" for nurses working on the rehabilitation unit, and she testified that the job description for the clinical nurse I position described what an RN in the rehabilitation unit did. Phelps dep. vol. 1 at 74, 126-27. Lemire also testified that lifting patients was a requirement for a nurse on that unit. See Lemire dep. at 55-56. Phelps further testified that she could not do some of the listed requirements of the clinical nurse I position in October of 1997, as described in the written job description, including the job's physical requirements for bending, dragging, hauling, and lifting; the ability to perform the job alone; and the ability to exert fifty pounds of force frequently and twenty pounds constantly.[3] See Phelps dep. at 74-76.

_____

[3]Phelps's argument that an essential function must be some particular kind of nursing work such as performing CPR, lifting patients, or checking lung function, rather than a physical capacity requirement, is unavailing. Phelps admitted in her deposition that because of her physical limitations, she was not able to check lung functions on an immobile patient, lift patients, or perform CPR. Lemire testified that lifting was an essential part of the job in that she had to lift patients to help them in and out of bed, to go to the bathroom, and for bathing. See also Lenker v. Methodist Hosp., 210 F.3d 792, 796

Phelps argues that because the job-sharing position did not require her to do heavy lifting, the lifting and physical requirements of the clinical nurse I position did not apply to her. Phelps's argument ignores the reality of the job. As she testified, she was working as a staff nurse on the unit and the description of the clinical nurse I position described the duties of a staff nurse. The fact that Phelps worked out a job-sharing arrangement with her sister that relieved her of some of the essential functions of the job does not change the applicable job description of the position. Therefore, based on the evidence of record, it is undisputed that Phelps held a clinical nurse I position when she was dismissed and that she was unable to perform certain essential functions of the job that involved heavy lifting.

B. Reasonable Accommodation

A disabled employee may still be a qualified individual, within the meaning of the ADA and the Rehabilitation Act, if she

_____

(7th Cir. 2000) (affirming verdict based on finding that lifting was essential function of hospital nurse's job under similar circumstances). Lemire also testified that Phelps could not perform all of the patient care, listed as an essential function listed in the clinical nurse I description, because of her lifting restriction.

9

could perform the essential functions of her job with reasonable accommodation of her disability. See Ward, 209 F.3d at 36. The plaintiff bears the burden of showing that a reasonable accommodation exists, and then, to avoid liability, the employer must show that the proposed accommodation would impose an undue hardship. See Garcia-Ayala, 212 F.3d at 646-47; see also Reed v. Lepage Bakeries, Inc., 102 F. Supp. 2d 33, 35-36 (D. Me. 2000). The employer's duty to provide a reasonable accommodation for a disabled employee is a continuing interactive process that requires communication between the employer and employee. See Garcia-Ayala, 212 F.3d at 648 n.12.

1. Job sharing as a reasonable accommodation.

Phelps argues that job sharing with her sister was a reasonable accommodation for her disability. Although job restructuring is a possible accommodation under the ADA, see 42 U.S.C.A. § 12111(9)(B), "[t]he ADA does not require an employer to accommodate a disability by foregoing an essential function of the position or by reallocating essential functions to make other workers' jobs more onerous," Feliciano v. Rhode Island, 160 F.3d 780, 785 (1st Cir. 1998). Since Phelps could not perform essential functions of the job that required lifting, the defendants were not obligated to exempt Phelps from those

10

functions or to assign those functions to others.  See id.; Soto-Ocasio v. Federal Express Corp., 150 F.3d 14, 20 (1st Cir. 1998); see also, e.g., Bratten v. SSI Servs., Inc., 185 F.3d 625, 632 (6th Cir. 1999); Brickers v. Cleveland Bd. of Educ., 145 F.3d 846, 850 (6th Cir. 1998); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112-13 (8th Cir. 1995); Roubal v. Reynolds, 2000 WL 791762, at *9 (E.D. Mich. June 5, 2000); Brookins v. Indianapolis Power & Light Co., 90 F. Supp. 2d 993, 1007 (S.D. Ind. 2000); Needle v. Alling & Cory, Inc., 88 F. Supp. 2d 100, 106-07 (W.D.N.Y. 2000); McCollough v. Atlanta Beverage Co., 929 F. Supp. 1489, 1501 (N.D.Ga.1996).  That the defendants previously allowed Phelps to avoid the lifting requirements by job sharing with her sister does not obligate them to continue to provide an accommodation that is not required under the ADA.  See, e.g., Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1527 (11th Cir. 1997); Vande Zande v. State of Wis. Dep't of Admin., 44 F.3d 538, 545 (7th Cir. 1995); Basith v. Cook County, 2000 WL 246255, at *10 (N.D.Ill. Feb. 24, 2000).

2.  Medication nurse as a reasonable accommodation.

Phelps also argues that the defendants were obligated to reassign her to the job of medication nurse as a reasonable accommodation.  Reasonable accommodation includes the employer's

11

duty to reassign an otherwise qualified employee to an existing vacant position. See 42 U.S.C.A. § 12111(9)(B); Feliciano, 160 F.3d at 786. Reasonable accommodation through reassignment does not include an obligation to create a new job for the employee. See Hoskins v. Oakland County Sheriff's Dep't, 2000 WL 1043238, at *9 (6th Cir. 2000); Wellington v. Lyon County Sch. Dist., 187 F.3d 1150, 1155 (9th Cir. 1999); Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1305 (D.C. Cir. 1998).

In this case, the evidence of record establishes that the medication nurse position was created in 1989 to address a staffing need in the rehabilitation unit with a job structured to accommodate Phelps's disability. Phelps gave up the medication nurse position in 1995 when she began job sharing with her sister. Phelps has not demonstrated that the medication nurse position existed and was vacant in October of 1997 when she was dismissed from her job at CMC. Indeed, the evidence of record indicates that the job no longer existed. As noted above, the defendants were not obligated to recreate the position in 1997. Therefore, Phelps has not carried her burden of showing that a medical nurse position existed and was vacant when she was dismissed.

3. Interactive process.

Phelps also argues that the defendants failed to fulfill their obligation to engage in an interactive process with her for the purpose of finding a reasonable accommodation. See Garcia-Ayala, 212 F.3d at 648 n.12. "There may well be situations in which the employer's failure to engage in an informal interactive process would constitute a failure to provide reasonable accommodation that amounts to a violation of the ADA." Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 515 (1st Cir. 1996); accord Soto-Ocasio, 150 F.3d at 19. The risk to an employer who fails to engage in appropriate interaction with a disabled employee for the purpose of finding a reasonable accommodation is that the employer may dismiss the employee when accommodation was available in violation of the ADA and the Rehabilitation Act. See Donahue v. Consolidated Rail Corp., 2000 WL 1160947, at *6 (3d Cir. Aug. 17, 2000).

The plaintiff bears the burden of showing that her employer knew of her disability, that she requested accommodation, that the employer did not engage in an appropriate interactive process for finding a reasonable accommodation, and that a reasonable accommodation existed. See Cravens v. Blue Cross and Blue Shield, 214 F.3d 1011, 1021 (3d Cir. 2000). The employer has an obligation, as part of the interactive process, to identify some

13

appropriate reassignment positions, if such exist.  See Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 694-95 (7th Cir. 1998).  Nevertheless, even if an employer fails to properly engage in the interactive process, the plaintiff bears the burden of establishing that a reasonable accommodation existed, such as an appropriate vacant position.  See Donahue, 2000 WL 1160947, at *6; Rehling v. City of Chicago, 207 F.3d 1009, 1014-15 (7th Cir. 2000); Jackan v. New York State Dep't of Labor, 205 F.3d 562, 567 (2d Cir. 2000).

Phelps contends that the defendants failed to engage in an appropriate interactive process because they dismissed her from the rehabilitation unit job before discussing possible accommodation, did not consider the medication nurse position as an alternative, and provided too little assistance in finding a reassignment.  As is discussed above, the defendants were not obligated to consider Phelps's job-sharing position or the medication nurse job as reasonable accommodation.  Even if Phelps could show that the defendants did not sufficiently engage in an interactive process for finding reasonable accommodation through a reassignment, she cannot prevail because she has not shown that such a position existed and was vacant.

The jobs Phelps cites in her affidavit in support of her claim include several positions that required the same physical

14

abilities that she admitted she could not do in the context of the rehabilitation unit job. Those positions, therefore, would not constitute reasonable accommodation for her disability. She was offered the "Ask A Nurse" job and a case manager job, which she now cites as available reasonable alternatives, and she turned down those jobs. See Hankins v. The Gap, Inc., 84 F.3d 797, 802 (6th Cir. 1996) ("[P]laintiff's refusal to accept available reasonable accommodations precludes her from arguing that other accommodations should also have been provided.").

The only other position that Phelps cites, breast health specialist, required a minimum of two years experience in oncology, which Phelps does not show that she had. In addition, the breast health specialist position required a work schedule of Monday through Friday on the day shift with flexibility to meet occasional patient needs at other times and occasional overnight travel. Phelps rejected the case management position that was offered in part because it required work four or five days each week which would not fit with her work schedule.

Further, Phelps never applied for or indicated an interest in any of the available jobs at Optima Health. Even if the formal internal application process were determined to be less

15

accommodating than is required,[4] she made no effort to engage in the process of locating an appropriate reassignment.  See, e.g., Thompson v. Dot Foods, Inc., 5 F. Supp. 2d 622, 628 (C.D. Ill. 1998).  Phelps has not shown that she did her part to participate in good faith to assist in the search for a reasonable accommodation.  See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 31 (3d Cir. 1999).

Therefore, Phelps has not shown a triable issue either that the defendants failed to properly engage in the interactive process or that a reasonable accommodation was available.

---

[4]Phelps primarily contends that the defendants improperly required her to apply for an internal transfer in the same manner as other applicants for internal transfer.  If that were the only effort the defendants made, Phelps might have a point.  See, e.g., Smith v. Midland Brake, Inc., 180 F.3d 1154, 1164-67 (10th Cir. 1999); Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1305 (D.C. Cir. 1998).  The facts of record, show, however, that the defendants offered more help than that to Phelps, and Phelps has not provided evidence that the defendants acted in bad faith. Cf. Gile v. United Airlines, Inc., 213 F.3d 365, 373 (7th Cir. 2000); Fjellstad v. Pizza Hut of America, Inc., 188 F.3d 944, 953-54 (8th Cir. 1999).

16

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 16) is granted.  The clerk of court shall enter judgment in favor of the defendants and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

September 15, 2000

cc:  Sheila O'Leary Zakre, Esquire
     Peter S. Cowan, Esquire

17