Joyce v. Dartmouth Med. School       CV-02-274-B    10/08/02

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE


**Terrence J. Joyce, M.D.**

    **v.**

**Dartmouth Medical School and**
**Dartmouth Graduate School**

Civil No. 02-274-B
Opinion No. 2002 DNH 179


### MEMORANDUM AND ORDER


Terrence J. Joyce, M.D., a Massachusetts resident, brings this *pro se* action against Dartmouth Medical School and Dartmouth Graduate School ("Dartmouth").[1]  Joyce alleges that Dartmouth breached a contract and committed various torts against him including: slander; slander per se; libel; intentional infliction of emotional distress; negligent infliction of emotional distress; and negligence.  Pursuant to Fed. R. Civ. P. 12(b)(6), Dartmouth moves to dismiss.  It argues that several of Joyce's

---

[1]  Trustees of Dartmouth College is the formal corporate name of Dartmouth College.  Both Dartmouth Medical School and all Dartmouth graduate programs are operated by the Trustees of Dartmouth College.  As such, the "two" defendants are one entity. For purposes of this Order, the two named defendants are therefore referred to in the singular as "Dartmouth."

claims are barred by the New Hampshire statute of limitations, N.H. Rev. Stat. Ann. § 508:4, and that his remaining claims fail to state viable causes of action.  For the reasons stated below, I grant Dartmouth's motion.


## I.  BACKGROUND[2]

Joyce began medical school at Dartmouth in 1989 as a first year medical student.  Although Dartmouth offered other medical students from liberal arts backgrounds preparatory anatomy courses during the summer prior to entering medical school, Joyce was not provided with such an opportunity.  During that same academic year, Dartmouth began a new curriculum for first year medical students.  Both students and faculty were dissatisfied with the new curriculum because it was "excessively stressful and poorly planned."  Compl. ¶4.

During his first year of medical school, Joyce failed two required courses: neuroanatomy and physiology.  As a result,

---

[2]  As required by Fed. R. Civ. P. 12(b)(6), the following facts are described in a light most favorable to the nonmoving party, Joyce.  See Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir.1989).

Dartmouth's Committee on Student Performance ("CSP") required Joyce to repeat his first year of medical school, even though other students had been permitted to make up courses during the summer semester. After he was notified of CSP's decision, Joyce suffered "severe emotional distress." Compl. ¶8. Joyce continued to suffer emotional distress throughout his second year at Dartmouth due to "poor treatment" by Dartmouth faculty. Compl. ¶9. Joyce discussed the possibility of transferring to another medical school with "the Dean's office." Compl. ¶10. However, his requests to transfer were denied. Other students in the Medical School with "similar performance records" were permitted to transfer. Id.

In 1992, at the completion of his second year of medical school, Joyce sought to transfer to Harvard Medical School. Joyce was interested in joining Harvard's joint MD/PHD program. Some time during the application process, an Associate Dean at Dartmouth requested that Joyce consider joining Dartmouth's joint MD/PHD program. Joyce spoke with several members of Dartmouth faculty about the program. After being informed by Dartmouth

faculty that he would receive a tuition waiver for the last two years of medical school, and possibly a small stipend, Joyce ultimately decided that he would like to join Dartmouth's MD/PHD program.

Joyce was accepted into and joined the Pharmacology and Toxicology graduate program (within the MD/PHD program) in 1992. At this point, Joyce requested a letter from the Chairman of the Graduate Committee, Alan Eastman, confirming the fact that he would receive a tuition waiver. Eastman did not respond in writing to Joyce's requests. Nonetheless, Joyce began the prerequisites for the PHD program. The prerequisites consisted of three major components: (1) a written exam; (2) an "NIH" style grant; and (3) an oral defense of the grant before the Graduate Committee. Joyce passed the written exam, but encountered problems with the grant, in part because his grant advisor, Edward Bresnick, Chairmen of the Department of Pharmacology and Toxicology, left Dartmouth after Joyce had completed his grant and made all pertinent corrections.

The Graduate Committee, for reasons unclear from the record, informed Joyce that he would have to write a second grant. As a

result, Joyce again "suffered emotional distress." Compl. ¶30. Joyce completed another grant and spent "an inordinate amount of time" defending his grant before a "hostile examining committee." Compl. ¶33. The Graduate Committee ultimately "decided to fail [Joyce] mainly on subjective grounds." Compl. ¶34.

Dartmouth also refused to permit Joyce to pursue a master's degree. Joyce was "demoralized and emotionally distressed as a result of his graduate school experience." Compl. ¶39. Joyce left graduate school, without graduating, approximately two-and-one-half years after he entered in 1992.

In 1995, Joyce returned to Dartmouth Medical School. During his third and fourth years, Joyce was required to repeat at least two surgical clerkships. He also endured "excessively long and grueling hours" during this same time period. Compl. ¶46. After his fourth year of medical school, Joyce decided to spend another year at Dartmouth to take additional surgical clerkships and act as student editor of a medical journal.

Joyce completed Dartmouth Medical School in 1998. At this point, he began to look for residency programs in plastic surgery and/or neurosurgery. Despite his "best attempts," Joyce could

not secure a single recommendation from Dartmouth for plastic surgery or neurosurgery residency programs. Compl. ¶49. Instead, Dartmouth recommended that Joyce look into family practice or pathology programs. Joyce ultimately agreed that he should look for a residency in pathology after several conversations with the Dean's office. In one such conversation, a faculty member told Joyce that he would be in a better position to transfer to a plastic surgery program after completing a year in a pathology residency program.

Joyce was a resident in pathology at Yale from July 1998 to June 1999, when he left the program without completing his residency. In the fall of 1999, Joyce sought help from Dartmouth Medical School in finding a residency in ENT/plastic surgery. A letter of recommendation from the dean of an applicant's medical school is a requirement for residency programs. Dartmouth nevertheless failed to assist him in finding a residency position. As a result, Joyce was not invited for any interviews for residency positions in ENT/plastic surgery.

In the Spring of 2000, Joyce contacted Dartmouth for help in gaining admission to the public health program at Harvard University. Once again, Dartmouth declined to assist him. Joyce

continues to have difficulty finding employment because potential employers are concerned about his first year of medical school and his failure to complete both graduate school and his residency. In addition, Joyce is often questioned about why he has not received support from Dartmouth. Joyce believes he suffered irreparable career damage. He has hired several employment agencies to aid in his search, but remains unable to secure employment as a physician in his "area of expertise."

## II. STANDARD OF REVIEW

When I consider a motion to dismiss for failure to state a claim, I must accept the plaintiff's well-plead factual allegations as true, "draw all reasonable inferences [from the complaint] in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). Despite the liberal pleading requirements established by the federal rules, I need not accept subjective characterizations, bald assertions, or

unsubstantiated conclusions.  See <u>Correa-Martinez v. Arrillaga-</u>
<u>Belendez</u>, 903 F.2d 49, 52-53 (1st Cir. 1990); <u>Dewey v. Univ. of</u>
<u>N.H.</u>, 694 F.2d 1, 3 (1st Cir. 1982).

*Pro se* pleadings are held to a less-stringent standard than
those drafted by lawyers.  <u>See</u> <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886,
890 (1st Cir. 1997); <u>Rockwell v. Cape Cod Hosp.</u>, 26 F.3d 254, 255
(1st Cir. 1994).  Despite this rule, however, *pro se* status "does
not free a litigant in a civil case of the obligation to comply
with procedural rules," such as the minimum pleading
requirements.  <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28, n.2 (1st
Cir. 2000); <u>see</u> <u>Eagle Eye Fishing Corp. v. United States Dept. of</u>
<u>Commerce</u>, 20 F.3d 503, 506 (1st Cir. 1994); <u>FDIC v. Anchor</u>
<u>Props.</u>, 13 F.3d 27, 31 (1st Cir. 1994).  It is with this standard
in mind that I analyze Joyce's claims.


### III.  <u>ANALYSIS</u>

#### A.  <u>Claims Barred by the Statute of Limitations</u>

Joyce filed his complaint on March 12, 2002.  Dartmouth
argues that the applicable statute of limitations, N.H. Rev.
Stat. Ann. § 508:4 (1997 & Supp. 2001), bars Joyce's claims to
the extent that they are based on acts or omissions that occurred

more than three years before he filed his complaint.  I agree.

Joyce concedes that he discovered both his injuries and the causal connection between Dartmouth's improper actions and his injuries when Dartmouth engaged in the conduct on which his claims are based.  Thus, he has no claim that § 508:4's three-year limitation period should be tolled after he "discovered" his causes of action.  Nor does he plead any facts that would support an equitable tolling or fraudulent concealment defense to the statute of limitations.  Finally, he cannot claim that the statute of limitations should not begin to run until he discovered the full extent of his injuries because the New Hampshire Supreme Court has explicitly considered and rejected that argument.  See Rowe v. John Deere, 130 N.H. 18, 22-23 (1987).  Accordingly, Joyce's claims are barred by § 508:4 to the extent that they are based on conduct that occurred prior to March 12, 1998.

**B.  Other Claims**

The only claims Joyce makes that are not barred by the statute of limitations are his claims that Dartmouth is liable because it improperly failed to assist him in obtaining a residency in plastic surgery in the fall of 1999 and admission to

-9-

the Harvard Public Health program in the spring of 2000. These claims are deficient, however, because Joyce has failed to allege in other-than-conclusory terms that Dartmouth owes him a duty, either contractual or otherwise, to provide him with the requested assistance. Accordingly, Joyce has failed to state a viable claim for relief.

## IV. <u>CONCLUSION</u>

For the forgoing reasons, Dartmouth's motion to dismiss (Doc. No. 8) is granted. Dartmouth's Motion for a More Definite Statement is denied as moot in light of this Order. (Doc. No. 9)

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

October 8, 2002

cc:  Edward A. Haffner, Esq.
     Terrence J. Joyce, pro se