Mailhot v. FedEx Ground Package Sys.  CV-02-257-JD  08/29/03

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Robert Mailhot

    v.                           Civil No. 02-257-JD

                                         Opinion No. 2003 DNH 147

FedEx Ground Package System, Inc.


O R D E R

The plaintiff, Robert Mailhot, brings suit under the Americans with Disabilities Act ("ADA") against FedEx Ground Package System, Inc., alleging that FedEx discriminated against him based on his disability.  The court previously ruled in this case that the ADA provides protection to employees, not to independent contractors.  FedEx moves for summary judgment on the grounds that Mailhot was an independent contractor and that he cannot prove his ADA claims.


Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.

See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.[1] <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. <u>See</u> <u>id.</u> at 255.

## Background

Robert Mailhot began work as a delivery truck driver in January of 1998 when he purchased a truck and a FedEx delivery route. He signed FedEx's "Pick-Up and Delivery Contractor Operating Agreement," which provided for a one-year term of service with automatic renewals. The agreement consists of seventy-seven pages of directions and addenda pertaining to equipment and operations, insurance and indemnities, payment for services, performance-based service payments, drivers' duties, unusual expenses of operation, and the flex program. The

---

[1] Mailhot misunderstands the standard of review applicable to motions for summary judgment as limiting the court to identifying issues. Instead, although "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," summary judgment is appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249.

agreement also provided for termination of drivers and stated that Mailhot was an independent contractor, not an employee.

In March of 2001, Mailhot was diagnosed with bilateral degenerative arthritis in his hips. Mailhot notified his supervisor, Tony Gamache, of his condition. Mailhot knew that his condition would limit how long he would be able to continue his work as a delivery truck driver. In August of 2001, Mailhot's physician recommended that he be given an easier route. Mailhot asked FedEx to reduce the number of stops on his route, to have his truck loaded by 7:00 am, to have bulk stops removed from his route, and to have Pitco agree to a pickup time over several hours to allow flexibility in his schedule.

Mailhot sold his route in December of 2001. He applied for and was awarded social security benefits. He has been unable to work since early January of 2002.

## Discussion

Mailhot's ADA claim is that FedEx did not provide reasonable accommodation for his disability due to arthritis in his hips. He also alleges that in response to his requests, his supervisor, Tony Gamache, did not take his requests seriously and instead mocked, harassed, and threatened him which caused him to sell his route. FedEx moves for summary judgment on the grounds that

3

Mailhot was an independent contractor and, alternatively, that it is entitled to judgment as a matter of law on Mailhot's ADA claims.

A.   Employee or Independent Contractor

In determining whether a hired party is an employee, who is protected by the ADA, or an independent contractor, who is not, the court applies a broad meaning of employee, consonant with the remedial purposes of the ADA. Clackamas Gastroenterology Assoc. v. Wells, 123 S. Ct. 1673, 1678 n.6 (U.S. 2003). The common-law test used for determining employment status provides as follows:

> "'[The court] consider[s] the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.'"

Id. at 1677-78 n.5 (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322 (1992) quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989) (citing Restatement (Second) of Agency § 220(2) (1958))). "In weighing these

4

factors, all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." Darden, 503 U.S. at 324 (quotation omitted). Mailhot bears the burden of establishing the existence of a protected employment relationship. See, e.g., Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 380 (7th Cir. 1991) (analyzing employment relationship in Title VII context).

Mailhot did not present his argument for employee status under the Darden factors, but instead provided a narrative description of circumstances he contended indicated employee status. Cf. Mazzei v. Rock-N-Around Trucking, Inc., 246 F.3d 956, 964-65 (7th Cir. 2001) (providing analysis of employment status of owner-operator drivers under Darden factors); Berger Transfer & Storage v. Cent. States, Southeast & Southwest Areas Pension Fund, 85 F.3d 1374, 1378-79 (8th Cir. 1996) (same); Rumpke v. Rumpke Container Serv., Inc., 240 F. Supp. 2d 768, 772-73 (S.D. Ohio 2002) (same). Contrary to the Darden standard, FedEx emphasized an entrepreneurial risk factor used in Labor Relations Div. v. Teamsters Local 379, 156 F.3d 13 (1st Cir. 1998), taken from the legislative history of the Labor Management Relations Act, which is not applicable here. Id. at 20. The entrepreneurial risk factor will not be considered.

Although the facts pertinent to many of the Darden factors

5

might indicate independent contractor status if they were considered in the context of trial, in the summary judgment context the evidence must be taken in the light most favorable to Mailhot. Taken in the proper light, the factual record is not undisputed and does not show that FedEx is entitled to judgment as a matter of law on the issue of employment status. Therefore, summary judgment on that issue is denied.

B. ADA Claims

Mailhot brings claims under the ADA that FedEx failed to provide reasonable accommodation for his disability, permitted a hostile work environment arising from his disability, and retaliated against him for requesting accommodation. FedEx moves for summary judgment contending that Mailhot was not qualified to do his job with or without reasonable accommodation, that he was not discharged because of his disability,[2] that the events were not sufficiently severe or pervasive to constitute a hostile work environment, and that he cannot prove retaliation.

---

[2]Because Mailhot does not claim that he was discharged because of his disability, this part of FedEx's motion, which is not supported with any developed argumentation or citation to authority, will not be considered.

6

<u>1. Reasonable accommodation.</u>

"In order to avoid summary judgment on his reasonable accommodation claim, [Mailhot] must produce enough evidence for a reasonable jury to find that (1) he is disabled within the meaning of the ADA, (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [FedEx], despite knowing of [Mailhot's] disability, did not reasonably accommodate it." <u>Rocafort v. IBM Corp.</u>, 334 F.3d 115, 119 (1st Cir. 2003). "An essential function is a fundamental job duty of the employment position the individual with a disability holds or desires." <u>Ward v. Mass. Health Research Inst., Inc.</u>, 209 F.3d 29, 34 (1st Cir. 2000) (quotation omitted). Although reasonable accommodation may include job restructuring and modified work schedules, an employer has no obligation to modify an essential job function or to reallocate an essential job function to other employees in order to accommodate a disabled employee. <u>Calef v. Gillette Co.</u>, 322 F.3d 75, 86 n.8 (1st Cir. 2003); <u>Soto-Ocasio v. Federal Express Corp.</u>, 150 F.3d 14, 20 (1st Cir. 1998). If a requested accommodation would allow a disabled employee to perform his essential job functions, an employer's failure to engage in an interactive process with the employee about accommodation may constitute a failure to provide reasonable accommodation. <u>Kvorjak v. Maine</u>,

7

259 F.3d 48, 58 (1st Cir. 2001); <u>Garcia Ayala v. Lederle Parenterals, Inc.</u>, 212 F.3d 638, 648 n.12 (1st Cir. 2000).

It is undisputed that Mailhot is disabled within the meaning of the ADA. It is also undisputed that Mailhot continued to work, despite his disability, until he sold his route in December of 2001, making him a qualified individual under the ADA. FedEx knew that Mailhot was disabled.

During the last year of his work, Mailhot requested accommodations, including the time and manner of loading his truck, the number and type of stops on his route, his route schedule, and the location of packages to be picked up. The parties dispute whether the accommodations that Mailhot requested were reasonable in light of the essential functions of the job. It is undisputed, however, that FedEx denied most if not all of Mailhot's requests for accommodation and did not engage in any interactive process to determine whether accommodation was possible and reasonable. Therefore, based on the present record, summary judgment is not appropriate on the reasonable accommodation part of the claim.


## 2. Hostile environment.

FedEx contends that Mailhot's allegations in support of his claim of a hostile work environment are not sufficiently severe

8

or pervasive to support the claim.[3]  To support a claim of hostile work environment, the discriminatory harassment must be severe or pervasive, based on all the circumstances, including "the frequency and severity of the discriminatory conduct, whether the conduct was physically threatening or humiliating, whether the conduct unreasonably interfered with the employee's work performance, and the effect of the conduct on the employee's psychological well-being."  Che v. Mass. Bay Trans. Auth., 2003 WL 22006248, at *6 (1st Cir. Aug. 26, 2003).  Whether the harassment is sufficiently severe or pervasive is an objective analysis based on "common sense, and an appropriate sensitivity to social context."  Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 23 (1st Cir. 2003) (quotation.

"As a general matter, these are questions best left for the jury."  Che, 2003 WL 22006248, at *6.  The record presented here does not suggest that this case varies from the norm.  Therefore, summary judgment is not appropriate on the question of hostile work environment.

---

[3]Although there is some question as to whether the First Circuit would recognize a hostile work environment under the ADA, FedEx has not challenged the claim on that basis.  See Rocafort, 334 F.3d at 120.

9

### 3. Retaliation

"Under the ADA, as with claims of retaliation under Title VII, [Mailhot] must establish that (1) he engaged in protected conduct, (2) he suffered adverse employment action, and (3) there was a causal connection between his conduct and the adverse action." Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 177 (1st Cir. 2003). Mailhot contends that he engaged in protected conduct by requesting that FedEx remind customers to leave packages in a pre-determined area, by giving Tony Gamache his doctor's note, by requesting prompt loading of his truck, stop counts on his deliveries, and removal of bulk stops from his route, and by notifying Gamache that he was seeking legal assistance. In response, Mailhot contends, Gamache berated him, threatened to fire him, and on one occasion, in retaliation for Mailhot seeking legal assistance, Gamache sent him for drug testing.

FedEx challenges only the event when Mailhot contends that Gamache retaliated by sending him for drug testing. FedEx asserts, based on Gamache's deposition testimony, that the Department of Transportation required drug testing and that Mailhot's selection on that occasion was random, not retaliatory. Taken in the context of Gamache's other behavior toward Mailhot and in the proper light for summary judgment, a factual dispute prevents judgment as a matter of law on that event. FedEx does

10

not challenge the other bases raised by Mailhot for the retaliation claim.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 11) is denied.  The court strongly encourages counsel to engage in good faith efforts to settle this case, given the risk and difficulties the case presents for both sides.

SO ORDERED.

                                  _____

                                  Joseph A. DiClerico, Jr.
                                  United States District Judge

August 29, 2003

cc:  Eleanor H. MacLellan, Esquire
      Andrea K. Johnstone, Esquire